## *In re* WILSON, Petitioner.

ORIGINAL.

No. 11. Original. Submitted April 27, 1891. — Decided May 25, 1891.

Prior to 1885 the District Courts of a Territory had jurisdiction over the crime of murder, committed by any person other than an Indian, upon an Indian reservation within its territorial limits; and such jurisdiction was not taken away by the act of March 3, 1885, c. 341, § 9, 23 Stat. 385.

A deficiency in the number of grand jurors prescribed by law, there being present and acting a greater number than that requisite for the finding of an indictment, is not such a defect as vitiates the entire proceedings, and compels his discharge on *habeas corpus*, though unnoticed by the prisoner until after trial and sentence.

If it be doubtful whether the defendant can, after trial and verdict, take advantage of such a defect by direct challenge, it is clear that the defect does not go to the jurisdiction, and cannot be taken advantage of by a collateral attack in *habeas corpus*.

It is unnecessary to decide whether the "sixty days'" limitation of the sessions of the legislative assemblies of the Territories means a term of sixty calendar days.

THE case is stated in the opinion.

*Mr. J. Altheus Johnson* for the petitioner.

*Mr. Solicitor General* opposing.

MR. JUSTICE BREWER delivered the opinion of the court.

On June 12, 1890, the petitioner was, by the District Court of the Second Judicial District of the Territory of Arizona, sentenced to be hung. He has sued out this *habeas corpus* to test the validity of such sentence. He does not come here by writ of error to review the proceedings, so that errors therein may be corrected; but attacks them in this way, collaterally, as void. His attack is rested on two propositions. The proceedings had were in a territorial court, sitting as a court of the United States. The first claim is, that the court did not have jurisdiction of the offence charged. The indictment

charges the crime of murder committed upon one William
Fleming, within the White Mountain Indian Reservation,
in the Second Judicial District of the Territory of Arizona.
The petition alleges that the petitioner is a citizen of the
United States, of African descent; that William Fleming, the
person killed, was also a negro; that the Second Judicial Dis-
trict of Arizona is composed of four counties, one of them
being the county of Gila; and that the White Mountain
Indian Reservation is within said county of Gila. The reser-
vation, therefore, is within the territorial limits of the Second
Judicial District, but the contention is that the District Court
of that district, sitting as a United States court, did not have
jurisdiction, but that it was vested alone in the District Court
sitting as a territorial court; and that the indictment should
have run in the name of the people of the Territory, instead of
in the name of the United States of America. The second
contention is, that the grand jury which indicted him was not
a legally constituted tribunal, in that it was composed of only
fifteen persons. In this respect it is admitted that by the laws
of the Territory of Arizona, in force until March 22, 1889,
grand juries were to be composed of not less than thirteen nor
more than fifteen members, (Revised Statutes Arizona, p. 384,
sec. 2164,) but it is claimed that on that day a law came into
force by which the number of members of a grand jury was
increased, and required to be not less than seventeen nor more
than twenty-three. Upon these two propositions the petitioner
denies the validity of the sentence against him, and asks that
he be discharged from custody.

With respect to the first question, it may be observed that
the White Mountain Indian Reservation was a legally consti-
tuted Indian reservation. True, when the Territory of Arizona
was organized, on February 24, 1863, 12 Stat. 664, c. 56, there
was no such reservation; and it was created in the first instance
by order of the President in 1871. Whatever doubts there
might have been, if any, as to the validity of such executive
order, are put at rest by the act of Congress of February 8,
1887, 24 Stat. 388, c. 119, § 1, the first clause of which is
"That in all cases where any tribe or band of Indians has been

"shall hereafter be, located upon any reservation created for their use, either by treaty stipulations or by virtue of an act of Congress or executive order setting apart the same for their use, the President of the United States be, and he hereby is, authorized, whenever in his opinion any reservation, or any part thereof, of such Indians is advantageous for agricultural and grazing purposes, to cause said reservation, or any part thereof, to be surveyed, or resurveyed if necessary, and to allot the lands in said reservation in severalty to any Indian located thereon, in quantities, as follows."

The necessary effect of this legislative recognition was to confirm the executive order, and establish beyond challenge the Indian title to this reservation. Indeed, the fact that this is an Indian reservation is not contested by the petitioner; but rather assumed by him in his argument. His proposition is, that "Congress by act approved March 3, 1885, 23 Stat. 385, c. 341, § 9, conferred upon the Territory and her courts full jurisdiction of the offence of murder when committed on an Indian reservation by an Indian. *Ex parte Gon-sha-yee*, 130 U. S. 343. This offence had heretofore, when committed in such place by others than an Indian, been cognizable by the courts of the United States under Rev. Stat. § 2145. The petitioner believes that the United States, by yielding up a part of her jurisdiction over the offence of murder when committed on an Indian reservation, lost all; that is, that her jurisdiction of the offence in the particular place must be 'sole and exclusive,' or will not exist at all; that it cannot be that there shall be one law and one mode of trial for a murder in a particular place if committed by an Indian and another law and mode of trial for the identical offence in the same place committed by a white man or a negro." We are unable to yield our assent to this argument. The question is one of statutory construction. The jurisdiction of the United States over these reservations and the power of Congress to provide for the punishment of all offences committed therein, by whomsoever committed, are not open questions. *United States* v. *Kagama*, 118 U. S. 375. And this power being a general one, Congress may provide for the punishment of one

class of offences in one court, and another class in a different court. There is no necessity for, and no constitutional provision compelling, full and exclusive jurisdiction in one tribunal; and the policy of Congress for a long time has been to give only a limited jurisdiction to the United States courts. Section 2145 extends to the Indian country the general laws of the United States, as to the punishment of crimes committed in any place within the sole and exclusive jurisdiction of the United States, except as to crimes the punishment of which is otherwise expressly provided for. This Indian reservation is a part of the Indian country within the meaning of that section. *Bates* v. *Clark*, 95 U. S. 204; *Ex parte Crow Dog*, 109 U. S. 556. But this extension of the criminal laws of the United States over the Indian country is limited by the section immediately succeeding, 2146, as follows: "The preceding section shall not be construed to extend to crimes committed by one Indian against the person or property of another Indian, nor to any Indian committing any offence in the Indian country who has been punished by the local law of the tribe, or to any case where, by treaty stipulations, the exclusive jurisdiction over such offences is or may be secured to the Indian tribes respectively." So that before the act of 1885 the jurisdiction of the United States courts was not sole and exclusive over all offences committed within the limits of an Indian reservation. The words "sole and exclusive," in section 2145, do not apply to the jurisdiction extended over the Indian country, but are only used in the description of the laws which are extended to it. The effect of the act of 1885 was not to transfer to territorial courts a part of the sole and exclusive jurisdiction of United States courts, but only a part of the limited jurisdiction then exercised by such courts, together with jurisdiction over offences not theretofore vested therein. The argument of the petitioner therefore fails. There has been no transfer of part of a sole and exclusive jurisdiction, carrying by implication, even in the absence of express language, a transfer of all jurisdiction, but only a transfer of part of an already limited jurisdiction, and neither by language nor implication transferring that theretofore vested and not in terms trans-

ferred. We may here, in passing, notice that the distinction between District Courts when sitting as courts of the Territory, and when sitting as courts of the United States, was fully developed and explained in the case of *Ex parte Gon-sha-yee, supra;* that by section 629 of the Revised Statutes the Circuit Courts of the United States are given jurisdiction of crimes and offences cognizable under the authority of the United States; and that by the act organizing the Territory of New Mexico, of September 9, 1850, 9 Stat. 446, c. 49, and the subsequent act of February 24, 1863, 12 Stat. 664, c. 56, organizing the Territory of Arizona, the District Courts of the latter Territory were given the same jurisdiction in all cases arising under the Constitution and laws of the United States as is vested in the Circuit and District Courts of the United States. It follows that as the Circuit Courts of the United States have jurisdiction over the crime of murder committed within any fort, arsenal or other place within the exclusive jurisdiction of the United States, so, prior to 1885, the District Courts of a Territory had jurisdiction over the crime of murder committed by any person other than an Indian, upon an Indian reservation within its territorial limits, and that such jurisdiction has not been taken away by the legislation of that year. The first contention of petitioner, therefore, cannot be sustained.

The second is equally untenable. His proposition is, that the grand jury, which indicted him, was not a legally constituted tribunal — in that it was composed of only fifteen members — whereas, by an act of the legislature of the Territory of Arizona, passed on March 12, 1889, a day before that upon which the offence is charged to have been committed, it was required that grand juries should be composed of not less than seventeen nor more than twenty-three members. The response thereto is, that no such act was passed; and that, even if it were, the defect in the number of grand jurors did not vitiate the entire proceedings; so that they could be challenged collaterally on *habeas corpus,* but it was only a matter of error, to be corrected by proceedings in error. It appears from the record that a challenge to the grand jury was made by the

petitioner and overruled; but the ground here presented was not taken in such challenge.

With regard to this supposed act of the legislature, the official volume of the acts and resolutions of the legislative assembly of Arizona, of the year 1889, certified by the secretary of the Territory, contains no such act. It is claimed, however, that a bill passed both houses of the assembly — passing the house on March 8, 1889, and the council, March 9, 1889 — as appears from the assembly journals, and, on March 12, was properly certified and placed in the hands of the governor for his action; that he did not within ten days either approve by signing it or return it without his signature to the house in which it originated; and that the assembly continued in session until the 10th day of April, which was more than ten days after the bill was placed in the hands of the governor, whereby the bill passed into a law. The contention on behalf of the government is, that by virtue of the act of Congress of December 23, 1880, 21 Stat. 312, which reads as follows — " The session of the legislative assemblies of the various Territories of the United States shall be limited to sixty days' duration " — the session for the year 1889 was by law terminated on the 21st day of March, sixty days from the day, January 21, on which by law and in fact it commenced. It is urged that the sixty days mentioned in the statute means sixty calendar days; and that at the expiration of such sixty days the session terminates as a matter of law, and the legislative assembly has no power to do any valid act thereafter, or even to remain in session. The petitioner insists that the sixty days means sixty legislative days — days in which the legislature is actually in session; that the legislature acted upon this construction by continuing in session until the 10th day of April, and was thus a *de facto* legislature at least.

This presents an interesting question of statutory construction, one into which, however, we deem it unnecessary to enter. As it is a question, if it had been duly presented to the District Court, a court having jurisdiction over the offence and the prisoner, and by it erroneously decided, can it be that such erroneous decision would have vitiated the proceedings

and rendered void the sentence thereafter rendered? We think not. Does the fact that the question was not presented put the case in any worse position than if presented and erroneously decided? Assuming that this act of 1889 was legally passed, and was a law of the Territory, let us see what changes were accomplished by it. Prior thereto, as we have noticed, grand juries were to be composed of not less than thirteen nor more than fifteen members. The amendment made by this act provided that they should be composed of not less than seventeen nor more than twenty-three members. The record discloses that there were but fifteen members. Prior to 1889, the Territorial law authorized the finding of an indictment on the concurrence of twelve grand jurors. Rev. Statutes, Arizona, 778, sec. 1430. A similar provision is found in the Federal statutes. Rev. Stat. sec. 1021. The act of 1889 made no change in this respect; so, whether the grand jury was composed of thirteen — the lowest number sufficient under the prior law — or twenty-three, the highest number named in the act of 1889, the concurrence of twelve would have required the finding of an indictment. By petitioner's argument, if there had been two more grand jurors it would have been a legal body. If the two had been present, and had voted against the indictment, still such opposing votes would not have prevented its finding by the concurrence of the twelve who did in fact vote in its favor. It would seem, therefore, as though the error was not prejudicial to the substantial rights of the petitioner.

Again, by section 1392 of the Arizona Penal Code, (Arizona Rev. Statutes, 775,) "A person held to answer to a charge for a public offence can take advantage of any objection to the panel or to an individual grand juror in no other mode than by challenge." A challenge, as heretofore stated, was in fact made, but not on the ground now presented. When by statute a particular way is prescribed for raising an objection, and a party neglects to pursue the statutory way, and the objection is one which could have been cured at the time if attention had been called to it, must he not be adjudged to have waived that objection? *Montgomery v. The State,* 3 Kansas,

263. In that case, which was one in which an irregularity in impanelling a jury was the error complained of, the court observed: "Under the Criminal Code a party charged with crime may have the benefit of all just matters of defence as well as of all defects and imperfections in the proceedings against him on the part of the State which tend to prejudice his rights. But he must assert his privilege in the proper way and at the proper time, or he may be deemed to have waived it."

If it be said that the section of the Arizona Penal Code does not apply to proceedings in the District Courts sitting as United States courts, we pass to the general question, whether a deficiency in the number of grand jurors prescribed by law, there being present and acting a greater number than that requisite for the finding of an indictment, is such a defect as, though unnoticed by the prisoner until after trial and sentence, vitiates the entire proceedings and compels his discharge on *habeas corpus?* That question must be answered in the negative. The case of *Ex parte Watkins*, 3 Pet. 193, is an early and leading case on the question of the power of this court to examine on *habeas corpus* into the proceedings of a court of general criminal jurisdiction. In that case Watkins had been convicted in the Circuit Court of the United States for the District of Columbia, a court of general criminal jurisdiction. He filed his petition for a writ of *habeas corpus*, setting forth a copy of the indictment and sentence, and sought a discharge from custody on the ground that the indictment charged no offence punishable in the Circuit Court, or of which it could take cognizance; and that therefore the proceedings were *coram non judice* and totally void. The court unanimously, Chief Justice Marshall delivering the opinion, denied the application. We quote as follows: "This writ is, as has been said, in the nature of a writ of error which brings up the body of the prisoner, with the cause of commitment. The court can undoubtedly inquire into the sufficiency of that cause; but if it be the judgment of a court of competent jurisdiction, especially a judgment withdrawn by law from the revision of this court, is not that judgment in itself sufficient cause? Can the court, upon

this writ, look beyond the judgment and reëxamine the charges on which it was rendered? A judgment, in its nature, concludes the subject on which it is rendered, and pronounces the law of the case. The judgment of a court of record, whose jurisdiction is final, is as conclusive to all the world as the judgment of this court would be. It is as conclusive on this court as it is on other courts. It puts an end to inquiry concerning the fact by deciding it." pp. 202, 203. And again: "An imprisonment under a judgment cannot be unlawful unless that judgment be an absolute nullity; and it is not a nullity if the court has general jurisdiction of the subject, although it should be erroneous. The Circuit Court for the District of Columbia is a court of record, having general jurisdiction over criminal cases. An offence cognizable in any court is cognizable in that court. If the offence be punishable by law, that court is competent to inflict the punishment. The judgment of such a tribunal has all the obligation which the judgment of any tribunal can have. To determine whether the offence charged in the indictment be legally punishable or not is among the most unquestionable of its powers and duties. The decision of this question is the exercise of jurisdiction, whether the judgment be for or against the prisoner. The judgment is equally binding in the one case and in the other, and must remain in full force unless reversed regularly by a superior court capable of reversing it." p. 203.

It may be true that subsequent decisions of this court have softened a little the rigor of the rule thus declared. *Ex parte Bain*, 121 U. S. 1, is cited in support of this claim. In that case it appeared that after the indictment had been returned to and filed with the court, a change was made in its language by the prosecuting attorney, on permission and order of the court. It was held on *habeas corpus* that such a change was beyond the power of the court, and that its jurisdiction was ended thereby as fully as if the indictment had been dismissed or a *nolle prosequi* entered; and therefore that a judgment rendered thereafter against the petitioner was one rendered without jurisdiction and void, and that the prisoner was entitled to his discharge. And yet in the opinion the distinc-

tion between matter of error and matter of jurisdiction was noticed, for it was said: "Upon principles which may be considered to be well settled in this court, it can have no right to issue this writ as a means of reviewing the judgment of the Circuit Court, simply upon the ground of error in its proceedings; but if it shall appear that the court had no jurisdiction to render the judgment which it gave, and under which the petitioner is held a prisoner, it is within the power and it will be the duty of this court to order his discharge." p. 3. See also *In re Coy*, 127 U. S. 731, 757; *In re Wood*, 140 U. S. 278, 370; *In re Shibuya Jugiro*, 140 U. S. 291.

As the question whether the grand jury should be constituted of fifteen or seventeen members was a matter which must necessarily be considered and determined by the trial court, its ruling thereon, however erroneous, would seem within the above authorities to present simply a matter of error, and not be sufficient to oust the jurisdiction. Indeed, it may be considered doubtful, at least, whether such a defect is not waived if not taken advantage of before trial and judgment. In the case of *United States* v. *Gale*, 109 U. S. 65, a question as to the competency of the grand jury was presented for the first time, on a motion in arrest of judgment, and from the decision of the trial court came to this court on a certificate of division. The objection was that in the organization of the grand jury the court, under the authority of section 820, Revised Statutes, excluded from the panel persons otherwise qualified, who voluntarily took part in the rebellion. The unconstitutionality of this section was asserted; but this court declined to pass upon that question, holding that the defendants, by pleading to the indictment and going to trial without making any objection to the grand jury, waived any right of subsequent complaint on account thereof. Mr. Justice Bradley, delivering the opinion of the court, reviews the authorities at length, and shows that they clearly sustain the conclusion announced. The opinion is carefully guarded, and does not reach to the precise question here presented; but its implication, and the drift of the authorities referred to, is that a defect in the constitution or organization of a grand jury

which does not prevent the presence of twelve competent jurors, by whose votes the indictment is found, and which could have been cured if the attention of the court had been alled to it at the time, or promptly remedied by the empan- lling of a competent grand jury, is waived if the defendant treats the indictment as sufficient, pleads not guilty, and goes to trial on the merits of the charge. There is good sense in this conclusion. The indictment is the charge of the State against the defendant, the pleading by which he is informed of the fact, and the nature and scope of the accusation. When that indictment is presented, that accusation made, that plead- ing filed, the accused has two courses of procedure open to him. He may question the propriety of the accusation, the manner in which it has been presented, the source from which it proceeds, and have these matters promptly and properly determined; or, waiving them, he may put in issue the truth of the accusation and demand the judgment of his peers on the merits of the charge. If he omits the former and chooses the latter, he ought not, when defeated on the latter, when found guilty of the crime charged, to be permitted to go back to the former and inquire as to the manner and means by which the charge was presented. See upon this question Wharton's Criminal Pleading and Practice, sec. 353; 1 Chitty's Criminal Law, page 309; *People* v. *Robinson*, 2 Parker Cr. Rep. 233–308, *et seq.;* 1 Bishop on Criminal Procedure, sec. 884; *Shropshire* v. *The State*, 12 Arkansas, 190.

If it be, therefore, a doubtful question, whether the defend- ant can, after trial and verdict, take advantage of such a defect by direct challenge, it would clearly seem that it is one not going to the matter of jurisdiction, and one which cannot be taken advantage of by a collateral attack in *habeas corpus*.

The application must therefore be

*Denied, and the petitioner remanded to the custody of the marshal.*