James Francis SMITH

v.

Franklin K. BROUGH, Warden, Maryland
Penitentiary.

Civ. No. 16435.

United States District Court
D. Maryland.

Dec. 14, 1965.

Morris L. Kaplan, Baltimore, Md., for petitioner.

Thomas B. Finan, Atty. Gen. of Maryland, Robert F. Sweeney, Asst. Atty. Gen., Chief, Criminal Division, and Morton A. Sacks, Asst. Atty. Gen., Baltimore, Md., for respondent.

George L. Russell, Jr., Baltimore, Md., amicus curiæ.

THOMSEN, Chief Judge.

The petitioner in this habeas corpus proceeding, a Maryland State prisoner, contends that he has been deprived of his rights under the Fourteenth Amendment to the Constitution of the United States because, pursuant to Article 36 of the Declaration of Rights in the Constitution of Maryland,[1] persons who did

---

1. "*Article 36. Religious freedom.*
    "That as it is the duty of every man to worship God in such manner as he thinks most acceptable to Him, all persons are equally entitled to protection in their religious liberty; wherefore, no person

not believe in the existence of God were excluded from the grand jury which indicted him and from the petit jury which found him guilty. His contention is based upon Schowgurow v. State, 240 Md. 121, 213 A.2d 475, decided October 11, 1965, and State v. Madison, Md., 213 A.2d 880, decided shortly thereafter, in which the Court of Appeals of Maryland held that the provisions of Article 36 of the Maryland Declaration of Rights, requiring demonstration of belief in God as a qualification for service as a grand or petit juror, violated the Fourteenth Amendment and required a reversal of the convictions in those cases. However, the Court of Appeals further held that the legal principle enunciated therein should not apply retroactively, except for convictions which had not become final before the rendition of the opinion in Schowgurow.

Petitioner herein was indicted by the Grand Jury of Baltimore City on June 18, 1963, for obtaining money by false pretenses, was tried in the Criminal Court of Baltimore before Judge Harris and a jury, was found guilty, filed a motion for a new trial, which was denied by the Supreme Bench of Baltimore City, was sentenced on May 5, 1964, to a term of ten years, and appealed to the Court of Appeals of Maryland, which, on March 3, 1965, affirmed his conviction. James Francis Smith v. State, 237 Md. 573, 207 A.2d 493. No petition for a writ of certiorari was filed with the Supreme Court. The conviction therefore became final some months before October 11, 1965, the date of the decision in Schowgurow.

Petitioner's principal contention is that the exclusion of non-believers from the grand jury and the petit jury ren-

dered the indictment a nullity and all subsequent proceedings in the case illegal and unconstitutional. He argues that the ruling of the Court of Appeals in Schowgurow and Madison with respect to retroactivity was wrong, that he is being illegally held, and that this Court should order his release.

Respondent, represented by the Attorney General of the State, does not challenge in this case the decision of the Court of Appeals in Schowgurow, but does challenge so much of the decision in Madison as extends the benefit of the Schowgurow ruling to one who believes in God. Petitioner testified at the hearing on his present petition that he believes in God now and that he believed in God at the time of his trial. Respondent admits that in 1963 and 1964 nonbelievers were excluded from the grand and petit juries in Baltimore City pursuant to Article 36, but contends:

(a) that the benefit of the Schowgurow rule should be limited to the class excluded by Article 36, i. e., non-believers, unless a particular defendant can show prejudice or a likelihood of prejudice in his case;

(b) that petitioner waived any objection he might have to the composition of the grand jury by not making a timely objection, as required by Maryland Rule 725 b;

(c) that the Maryland Court did not deprive petitioner of any constitutional right when it held that the legal principles enunciated in Schowgurow and Madison should not apply retroactively, except for convictions which had not become final before the rendition of the Schowgurow opinion.

ought by any law to be molested in his person or estate, on account of his religious persuasion, or profession, or for his religious practice, unless, under the color of religion, he shall disturb the good order, peace or safety of the State, or shall infringe the laws of morality, or injure others in their natural, civil or religious rights; nor ought any person to be compelled to frequent, or maintain, or contribute, unless on contract, to main-

tain, any place of worship, or any ministry; nor shall any person, otherwise competent, be deemed incompetent as a witness, or juror, on account of his religious belief; provided, he believes in the existence of God, and that under His dispensation such person will be held morally accountable for his acts, and be rewarded or punished therefor either in this world or in the world to come."

■ Sometime between April and October 1965, petitioner filed a proceeding under the Maryland Post Conviction Procedure Act (P.C.P.A.),[2] raising other points.[3] He was permitted by a State Court to dismiss that petition without prejudice, so that he might file the petition now under consideration in this Court. Respondent does not contend in this case that petitioner should be required to exhaust his State remedies by presenting to the State Courts in a PCPA proceeding the points raised in this petition. In view of the decisions in Husk v. Warden, Md., 214 A.2d 139, and Hamm v. Warden, Md., 214 A.2d 141, and because of the importance of having the questions presented by this petition promptly decided, this Court will not require petitioner to exhaust his State remedies.

## I

In Torcaso v. Watkins, 223 Md. 49, 162 A.2d 438 (1960), the Court of Appeals of Maryland held that a person appointed by the Governor to be a notary public, who declined to take an oath of office because it required a declaration that he believed in the existence of God, and whose commission was withheld for that reason, was not deprived of any of his rights under the Federal Constitution. The Supreme Court of the United States reversed that decision, Torcaso v. Watkins, 367 U.S. 488, 81 S.Ct. 1680, 6 L.Ed. 2d 982 (1961), and held that the Maryland constitutional requirement, set out in Article 37 of the Declaration of Rights[4], invaded the appointee's freedom of belief and religion and could not be enforced against him.

In Schowgurow v. State, 240 Md. 121, 213 A.2d 475 (filed October 11, 1965), the Court of Appeals of Maryland held that, because of the decision of the Supreme Court in Torcaso, the provision of Article 36 of the Maryland Declaration of Rights (see note 1, above) requiring demonstration of belief in God as a qualification for service as a grand or petit juror violates the Fourteenth Amendment. By timely motions Schowgurow had challenged the compositions of the grand jury which indicted him and of the petit jury which tried him. The Court found that every member of those juries had been required, as part of his oath or affirmation, to declare a belief in God.

Schowgurow is a Buddhist, whose religion does not teach belief in the existence of God. The Court of Appeals noted that the Supreme Court has consistently held that a criminal defendant is denied the equal protection of the laws guaranteed by the Fourteenth Amendment if he is indicted by a grand jury or tried by a petit jury from which members of his race have been systematically excluded because of their race;[5] and that the Texas Court of Criminal Appeals has applied the same principle to the exclusion of Roman Catholics. Juarez v. State, 102 Tex.Cr.R. 297, 277 S.W. 1091 (1925). The Maryland Court stated that it could see no difference, under the Federal Constitution, in the position of a defendant who is a member of a class excluded from the jury for lack of belief in God

2. Annotated Code of Maryland, 1957 edition, Article 27, sections 645A–645J.

3. He did not challenge the composition of the grand jury or the petit jury until after the decision in Schowgurow, but contends that the PCPA proceeding prevented his conviction from becoming final. That point will be discussed in Section V of this opinion, below.

4. *"Article 37. Religious tests as qualification for office; oath of office.*
"That no religious test ought ever to be required as a qualification for any office of profit or trust in this State, other than a declaration of belief in the existence of God; nor shall the Legislature prescribe any other oath of office than the oath prescribed by this Constitution."

5. Eubanks v. State of Louisiana, 356 U.S. 584, 78 S.Ct. 970, 2 L.Ed.2d 991 (1958), and cases therein cited; Hernandez v. State of Texas, 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866 (1954). See Annot., Group or class discrimination in selection of grand or petit jury as prohibited by Federal Constitution—Supreme Court cases, 2 L.Ed.2d 2040 (1958).

from that of a defendant tried by a jury from which members of his race have been excluded because of their race.[6]

In answer to an argument by the State that Schowgurow had shown no prejudice and therefore, as to him, no denial of a constitutional right, the Court said: "When the system of jury selection on its face shows discrimination and exclusion, an actual showing of discrimination on the basis of comparative numbers of the excluded and non-excluded classes on the jury lists is unnecessary; it is the danger of abuse resulting from the method of selection which renders it unconstitutional."[7] The Court concluded: "For the reasons given, the challenges of the appellant to the composition of the grand jury which indicted him and the petit jury which tried him should have been upheld, and the motions to dismiss the indictment and to dismiss the petit jury panel should have been granted."

The Court held, however, "that the legal principle enunciated in this case shall not apply retroactively, except for convictions which have not become final before rendition of this opinion." The Court stated at length the reasons for that ruling; they will be discussed in Section V of this opinion.

A few days later, in a case involving a member of the Apostolic faith, who believed in the existence of a Supreme Being, the Court affirmed an order of the Criminal Court of Baltimore dismissing an indictment over the objection of the State that the defendant was not entitled to question the validity of the indictment because he was not a member of the class unconstitutionally excluded from the grand jury which indicted him. The Court of Appeals supplemented its per curiam order with an opinion, State v. Madison, Md., 213 A.2d 880 (filed November 5, 1965). In that opinion, after reciting the decision in Schowgurow and discussing various cases which will be considered in Section II, below, the Court said: " * * * once it is established that the method of the grand jury's selection is unconstitutional, any accused indicted by such a jury has the right to have the indictment dismissed. He has this right, not because of any individual prejudice to him but because, under the basic law of our land, all persons accused of crime have the right to be tried in accordance with the requirements of our legal system."[8] The Court

6. The Court noted that the class excluded by Article 37 includes not only the various religious groups referred to in Torcaso, 367 U.S. at 495, 81 S.Ct. 1680, whose members do not believe in God, but also all atheists and agnostics.

7. Citing Williams v. State of Georgia, 349 U.S. 375, 382, 75 S.Ct. 814, 99 L.Ed. 1161 (1955); Avery v. State of Georgia, 345 U.S. 559, 73 S.Ct. 891, 97 L.Ed. 1244 (1953). The Court added: "Here, the exclusion of non-believers from jury service is not only authorized but demanded by the Maryland Constitution. The resulting danger of abuse, under the decisions of the Supreme Court, at the least, puts the burden upon the State to show that there was no exclusion or discrimination. This burden has not been met."

8. The Maryland Court then said:
"The Supreme Court's decision in Torcaso which we held in Schowgurow rendered the exclusionary mandate of Article 36 of our Declaration of Rights in-

valid, rested upon the establishment of religion clause of the First Amendment to the Federal Constitution, made applicable to the states through the Fourteenth. Madison's right to challenge his indictment however, after Torcaso and Schowgurow, rests upon the due process and equal protection clauses of the Fourteenth Amendment and upon the law of the land provision of Article 23 of the Maryland Declaration of Rights. When the law of the land has been made clear (even when, as here, it is established by the reversal by the Supreme Court of a decision of this Court) a person accused of crime, to be entitled to due process, does not have to show that he would be injured if due process is lacking. The right to be tried in accordance with the law is the constitutional privilege of every man.

"Equal protection of the laws, as well as due process, is involved. * * * If we were to uphold the State's contention in this case, the effect would be that pending indictments against persons

reiterated the conclusion in Schowgurow that its ruling was not to apply retroactively, except for convictions which had not become final before the rendition of the opinion in Schowgurow.

In Husk v. Warden, Md., 214 A.2d 139, filed November 15, 1965, the Court denied an application for leave to appeal from an order denying relief under the Maryland Post Conviction Procedure Act[9] to a petitioner whose conviction had become final two years before the decision in Schowgurow. The Court made a similar ruling in Hamm v. Warden, Md., 214 A.2d 141, filed November 16, 1965. In each of those cases the Court stated that relief was denied because it had decided in Schowgurow that the legal principle enunciated therein should not apply retroactively, except for convictions which had not become final before the rendition of its opinion in that case.

In Kennard A. Smith v. State, Md., 214 A.2d 563, filed November 30, 1965, the defendant had been indicted before the decision in Schowgurow, and was tried in the Criminal Court of Baltimore three days after that decision. He elected to be tried by the judge without a jury. Immediately before his trial, after his rights under Schowgurow had been explained to him by his counsel and by the judge, Smith stated in open court that he waived all possible defects in the indictment. Nevertheless, a few days later, before sentence was imposed, he asked and received permission to file a motion to dismiss the indictment on the ground that he had been indicted by an illegally constituted grand jury, that the indictment was a nullity, that he could not waive a constitutional right, and that his conviction constituted a deprivation

of due process under the Fourteenth Amendment. The Court denied the motion and, after a new trial had also been denied, sentenced the defendant.

The Court of Appeals affirmed the conviction. Counsel for Smith argued that all indictments brought at any time by a grand jury which, under the decision in Schowgurow, was improperly selected, were null and void, and that any convictions thereunder had no legal effect. Answering that argument the Court said: "There is nothing in our decisions in Schowgurow and Madison, nor in their legal effect, upon which to predicate so catastrophic a conclusion." The Court pointed out that it had not held in either Schowgurow or Madison that the grand jurors who returned the respective indictments were not competent and qualified. It found that the defendant Smith had been indicted by a grand jury, every member of which was competent and qualifed to serve; that Maryland had jurisdiction over him and the subject matter of the alleged offense; and that the grand jury which indicted him was selected in accordance with what was then and had been the law of Maryland until a provision of that law was declared invalid.[10]

The Court specifically held "that the exclusion from the grand jury of persons who do not believe in the existence of a Supreme Being, declared invalid after the indictment had been brought, does not render the judicial proceeding based upon the indictment null and void but only gives the defendant the right, by timely action, to attack it." The Court concluded that the indictment of Smith by a grand jury selected in accordance with the provisions of the Maryland Declaration of Rights in effect at the

who believed in a Supreme Being could not be successfully challenged, while indictments against others who do not have that belief would be dismissed. There would, in effect, be an unconstitutional discrimination in favor of nonbelievers as against believers." 213 A.2d at 885–886.

9. See note 2, above.

10. The Court then stated: "Under these circumstances, in a case in which there had not been a final conviction, the defect in the method of the selection of the grand jury was error, but error which did not render the indictment inoperative unless Smith validly exercised his right to attack it."

time of the indictment was not void under the law of Maryland, that the defect could be and had been voluntarily and knowingly waived, and that there had been no deprivation of due process.

In Hays and Wainwright v. State, Md., 214 A.2d 573, also filed on November 30, 1965, the Court of Appeals held that defendants who had been indicted and convicted before the rendition of its opinion in Schowgurow, but whose timely appeals from their convictions came on for hearing in the Court of Appeals after that decision and the subsequent decision in Madison, were entitled to the benefit of those decisions because their convictions had not become final before the rendition of the opinion in Schowgurow. The Court noted that Maryland Rule 885[11] limits the questions which may ordinarily be raised on appeal, but added that it is also the law of the State "that if a change in the law after conviction but before final judgment, including the final judgment, of the highest court empowered to review the conviction, requires reversal of the judgment, the judgment will be reversed, because the decision must accord with the law as it is at the time of final judgment." The Court said: "The two rules are not in conflict; on the contrary, in conjunction, they embody the fundaments of fairness."

After a discussion of the precedents and the applicable legal principles,[12] the Court held that "under the Maryland law, Rule 885 does not bar the appellants from invoking the principle set forth in Schowgurow, which * * * effected a change in the Maryland law after the appellants' convictions but before final judgment."

The Court noted that its conclusion with respect to retroactivity was similar to that of the Supreme Court in Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), and rested upon the same broad considerations of public policy.

II

Respondent concedes that the decision of the Supreme Court in Torcaso requires the conclusion that the provision of Article 36 of the Maryland Declaration of Rights requiring demonstration of belief in the existence of God as a qualification for service as a grand or petit juror violates the Fourteenth Amendment to the United States Constitution. Respondent further concedes that if a defendant who does not believe in the existence of God and who has been indicted by a grand jury from which non-

---

11. Maryland Rule 885 provides:
   "This Court will not ordinarily decide any point or question which does not plainly appear by the record to have been tried and decided by the lower court; but where a point or question of law was presented to the lower court and a decision of such point or question of law by this Court is necessary or desirable for the guidance of the lower court or to avoid the expense and delay of another appeal to this Court, such point or question of law may be decided by this Court even though not decided by the lower court. Where jurisdiction cannot be conferred on the Court by waiver or consent of the parties, a question as to the jurisdiction of the lower court may be raised and decided in this Court whether or not raised and decided in the lower court."

12. In the course of which the Court said:
   "In this case, as we pointed out in Schowgurow, the law in effect at the time of the selection of the grand jury had been part of the Maryland constitution for over a century. That law was changed by this Court, because of the reversal of our decision by the Supreme Court in Torcaso v. Watkins, 367 U.S. 488 [81 S.Ct. 1680, 6 L.Ed.2d 982] (1961). The change in the law took place after the appellants had been indicted and convicted, pending their appeal. If the appellants had objected to the method of selection of the grand jury which indicted them before their trial or at any time in the proceedings below, that objection would have been rejected by the lower court, there then being no decision of this Court to the contrary. Unlike the failure to object in the cases which have been cited under Rule 885, the appellants' failure to object was not a waiver of an existing right."

believers have been excluded makes a timely challenge to the composition of the grand jury which indicted him, that challenge should be sustained.

Respondent contends, however, and asks this Court to rule that one who has been indicted by a grand jury from which non-believers have been excluded has not been deprived of his rights under the Fourteenth Amendment unless he is himself a member of the class which was excluded, i. e. a non-believer, or unless he shows some prejudice or likelihood of prejudice in his case. Respondent notes that in Fay v. People of State of New York, 332 U.S. 261, 67 S.Ct. 1613, 91 L.Ed. 2043 (1947), one of the cases cited in footnote 1 in Madison, the Supreme Court said that it had "never entertained a defendant's objections to exclusions from the jury except when he was a member of the excluded class." The Court must have been referring to cases in which it reviewed state court decisions on constitutional grounds; the Court had entertained such an objection in Ballard v. United States, 329 U.S. 187, 67 S.Ct. 261, 91 L.Ed. 181 (1946), where it was exercising its power of supervision over the administration of justice in the federal courts.[13]

It is true, as respondent points out, that many of the decisions relied on by the Maryland Court in Schowgurow were cases in which persons had been excluded from juries because of their race or color,[14] where the prejudice resulting from such exclusion is obvious.[15] It is also true that no such prejudice is likely to result to anyone from the exclusion of non-believers, except in rare cases involving some religious issue or overtones, such as violation of the Sunday laws or the activities of Mrs. Madelyn Murray, discussed in Murray v. Burns, 405 P.2d 309 (Hawaii 1965). We are not concerned with such a crime or such a person in this case, and no prejudice or likelihood of prejudice has been shown. A man's race is usually obvious to all who see him, his religious beliefs are not.

In Madison, the Maryland Court stated that "Supreme Court decisions requiring that the defendant be a member of the excluded class in order to have standing to attack the constitutionality of the method of jury selection under a law nondiscriminatory on its face are not here in point", because the exclusion involved in Madison and in Schowgurow was required by the Maryland Constitution. Certainly, as the Court stated in Schowgurow, the Maryland constitutional requirement places the burden on the State to show that there was no exclusion or discrimination; but it is not so

---

13. In Ballard v. United States the question at issue was the exclusion of women from a jury in a federal court. The Supreme Court said: " '[R]eversible error does not depend on a showing of prejudice in an individual case. The evil lies in the admitted exclusion of an eligible class or group in the community in disregard of the prescribed standards of jury selection. The systematic and intentional exclusion of women, like the exclusion of a racial group, Smith v. Texas, 311 U.S. 128 [61 S.Ct. 164, 85 L.Ed. 84], or an economic or social class, Thiel v. Southern Pacific Co., 328 U.S. 217 [66 S.Ct. 984, 90 L.Ed. 1181] (1946), deprives the jury system of the broad base it was designed by Congress to have in our democratic society * * * The injury is not limited to the defendant—there is injury to the jury system, to the law as an institution, to the community at large, and to the

democratic ideal reflected in the processes of our courts.' 329 U.S. at 195, 67 S.Ct. at 265."

14. See e.g. Eubanks v. State of Louisiana, 356 U.S. 584, 78 S.Ct. 970, 2 L.Ed.2d 991 (1958); Hernandez v. State of Texas, 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866 (1954); Williams v. State of Georgia, 349 U.S. 375, 75 S.Ct. 814, 99 L.Ed. 1161 (1955).

15. See Whitus v. Balkcom, 5 Cir., 333 F. 2d 496, at 498 et seq. (1964). Such prejudice may affect a defendant who is not a member of the excluded class. See e.g. Allen v. State, 110 Ga.App. 56, 137 S.E.2d 711 (1964), where the white defendant had been active in the registration of Negroes to vote, and so would probably have been prejudiced if the court had required that he be tried by a jury from which Negroes were excluded.

clear that it establishes per se such a case of *prejudicial* discrimination as would amount to a deprivation of due process under the Fourteenth Amendment. If non-believers were in fact excluded, it would make little if any difference in practical effect whether they were excluded because of a state constitutional provision, a statute, or by purposeful action of a judge or a clerk. Cf. Swain v. State of Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). The question whether there was a violation of a defendant's rights under the Fourteenth Amendment should turn on whether the facts and circumstances show some prejudice or likelihood of prejudice as a result of the exclusion. If the facts and circumstances show merely a bare possibility of prejudice, or no prejudice at all, it is doubtful whether a deprivation of due process or equal protection of the laws has been shown.

█ But it is not necessary for this Court to decide in this case whether the Fourteenth Amendment required the decision of the Court of Appeals of Maryland in Schowgurow and its extension in Madison. The opinions in Schowgurow and Madison, when read together, show that the Court was acting under the "law of the land" provision in Article 23 of the Maryland Declaration of Rights, as well as under its construction of the "due process" and "equal protection" clauses of the Fourteenth Amendment. Insofar as the decisions in Schowgurow and Madison were based on the Maryland Declaration of Rights, which is a part of the Maryland Constitution, it is neither necessary nor proper for a federal court to review those decisions. The State may accord a defendant greater rights than it is required to accord him by the Constitution of the United States. It is necessary, however, for this Court to decide whether the petitioner herein was deprived of any federally protected right 'by the ruling of the Maryland Court that the principles announced in Schowgurow and Madison should not be applied retroactively, except for convictions which had not become final before the rendition of the opinion in Schowgurow.

Whether or not the decisions in Schowgurow and Madison were required by the Fourteenth Amendment as well as by the Maryland Declaration of Rights, the question to be decided in this case is the same—Did the ruling with respect to retroactivity deprive the petitioner herein of due process of law or the equal protection of the laws in violation of the Fourteenth Amendment?

\*

Before discussing retroactivity, however, it is desirable to consider petitioner's contention that the exclusion of non-believers from the grand jury and the petit jury rendered the indictment null and void and the entire trial illegal, and respondent's contention that petitioner waived his right to raise those points in this proceeding by failing to raise them before or at his trial.

### III

In Kennard A. Smith, discussed in Section I above, the Court of Appeals of Maryland said:

"The Maryland law, in our opinion, is clear, apart from the federal decisions and decisions in other states to which reference has been made, that the exclusion from the grand jury of persons who do not believe in the existence of a Supreme Being, declared invalid after the indictment had been brought, does not render the judicial proceeding based upon the indictment null and void but only gives the defendant the right, by timely action, to attack it."

█ It is not the function of this Court to review the Maryland Court's ruling with respect to Maryland law. The only function of this Court is to decide whether that ruling, if applied in the instant case, conflicts with any provision of the United States Constitution, particularly the Fourteenth Amendment.

█ This Court concludes that the ruling does not conflict with any federal

constitutional principle. Indeed, it is supported by a number of federal decisions in analogous situations, most of which were cited by the Maryland Court.

In United States v. Gale, 109 U.S. 65, 3 S.Ct. 1, 27 L.Ed. 857 (1883), the defendants had been indicted for misconduct as election officers at a Florida election of a congressman. In impaneling the grand jury, four persons, otherwise competent, were excluded from the panel under R.S. 820, for "voluntarily taking part in the rebellion, and giving aid and comfort thereto". The defendants made no objection to the indictment until after a plea of not guilty and conviction in the Circuit Court, when objection was first taken on a motion in arrest of judgment. The judges of the Circuit Court certified several questions to the Supreme Court. One of the questions was whether the disqualifying statute was unconstitutional. The Supreme Court did not answer that question because the Court found that defendants had waived it by not entering a timely challenge to the array. The Court said:

"This, we think, is the true doctrine in cases where the objection does not go to the subversion of all the proceedings taken in impaneling and swearing the grand jury, but relates only to the qualification or disqualification of certain persons sworn upon the jury or excluded therefrom or to mere irregularities in constituting the panel. We have no inexorable statute making the whole proceedings void for any such irregularities." 109 U.S. at 67, 3 S.Ct. at 2.

Another question was whether judgment could be rendered against the defendants on an indictment found by a grand jury impaneled under the disqualifying section. The Court answered that question in the affirmative. After discussing English and American authorities, Mr. Justice Bradley said:

"A disqualified juror placed upon the panel may be supposed injuriously to affect the whole panel; but if the individuals forming it are unob-jectionable, and have all the necessary qualifications, it is of less moment to the accused what persons may have been set aside or excused. The present case is of the latter kind. No complaint is made that any of the grand jurors who found the indictment were disqualified to serve, or were in any respect improper persons. It is only complained that the court excluded some persons for an improper cause; that is, because they labored under the disqualification created by the 820th section of the Revised Statutes, which is alleged to be unconstitutional. It is not complained that the jury actually impaneled was not a good one; but that other persons equally good had a right to be placed on it. * * *

"Some importance is attached to the fact that the court followed an unconstitutional law, or one assumed to be such. We do not see that this is in any wise different from the case in which the court misconstrues the law. The result is the same: certain persons, under a misconception of the court, are excluded from the grand jury who are qualified to serve on it; but the jury as actually constituted is unexceptionable in every other respect. In either case, whether the court is mistaken as to the validity of a law, or as to its interpretation, the objection relates so little to the merits of the case that it ought to be taken in the regular order and due course of proceeding.

"There are cases, undoubtedly, which admit of a different consideration, and in which the objection to the grand jury may be taken at any time. These are where the whole proceeding of forming the panel is void; as where the jury is not a jury of the court or term in which the indictment is found, or has been selected by persons having no authority whatever to select them; or where they have not been sworn; or where some other funda-

mental requisite had not been complied with. But there is no complaint of this kind in the present case. The complaint simply relates to the action of the court in excluding particular persons who might properly have served on the jury. We do not think this vitiated all the proceedings so as to render them absolutely null and void. It might have sufficed to quash the indictment if the objection had been timely and properly made. Nothing more." 109 U.S. 65, at 70–71, 3 S.Ct. 1, at 4–5.

The principle enunciated in Gale has been applied to other indictments brought by grand juries which were improperly selected. See e. g. Rodriguez v. United States, 198 U.S. 156, 165, 25 S.Ct. 617, 49 L.Ed. 994 (1905); Kaizo v. Henry, 211 U.S. 146, 149, 29 S.Ct. 41, 53 L.Ed. 125 (1908). In the latter case the Supreme Court said:

"Disqualifications of grand jurors do not destroy the jurisdiction of the court in which an indictment is returned, if the court has jurisdiction of the cause and of the person, as the trial court had in this case. Ex parte Harding, 120 U.S. 782 [7 S.Ct. 780, 30 L.Ed. 824]; In re Wood, 140 U.S. 278 [11 S.Ct. 738, 35 L.Ed. 505]; In re Wilson, 140 U.S. 575 [11 S.Ct. 870, 35 L.Ed. 513]; See Matter of Moran, 203 U.S. 96, 104 [27 S.Ct. 25, 51 L.Ed. 105, 108]. The indictment, though voidable, if the objection is seasonably taken, as it was in this case, is not void. United States v. Gale, 109 U.S. 65 [3 S.Ct. 1, 27 L.Ed. 857]." 211 U.S. at 149, 29 S.Ct. at 42.

The cases holding that defendants had waived their right to challenge the composition of a jury because of the unconstitutional exclusion of women or other classes of persons [16] impliedly hold that the proceedings are not rendered null and void by such exclusion.[17] No federal decision has been cited or found which holds that such exclusion renders the indictment or the subsequent proceedings a nullity.

### IV

Respondent contends that petitioner waived his right to question the composition of the grand jury by failing to make that objection before his plea was entered, as required by Maryland Rule 725 b,[18]

"Any defense or objection which is capable of determination without the trial of the general issue may be raised before trial by motion.

"2. Defenses and Objections Which Must be Raised by Motion.

"Defenses and objections based on defects in the institution of the prosecution or in the indictment or information other than that it fails to show jurisdiction in the court or to charge an offense may be raised only by motion before trial. The motion shall include all such defenses and objections then available to the defendant. Failure to present any such defense or objection as herein provided constitutes a waiver thereof, but the court for cause shown may grant relief from the waiver. Lack of jurisdiction or the failure of the indictment or information to charge an offense shall be noticed by the court at any time during the pendency of the proceeding.

"3. Time of Making Motion.

"The motion shall be made before the plea is entered, but the court may permit

---

16. Dean v. United States, 9 Cir., 169 F.2d 70 (1948); Wright v. United States, 8 Cir., 165 F.2d 405 (1948); Scales v. United States, 4 Cir., 260 F.2d 21 (1958), aff'd 367 U.S. 203, 81 S.Ct. 1469, 6 L.Ed.2d 782 (1961); Poliafico v. United States, 6 Cir., 237 F.2d 97 (1956), cert. den. 352 U.S. 1025, 77 S.Ct. 590, 1 L.Ed. 2d 597 (1957).

17. See also the analogous cases involving the disqualification of a judge, Tumey v. State of Ohio, 273 U.S. 510, 525, 47 S.Ct. 437, 71 L.Ed. 749 (1927), In the Matter of Steele, 220 N.C. 685, 689, 18 S.E.2d 132, cert. den. 316 U.S. 686, 62 S.Ct. 1275, 86 L.Ed. 1758 (1942), and Tari v. State, 117 Ohio St. 481, 493–494, 497–498, 159 N.E. 594, 57 A.L.R. 284 (1927), discussed by the Maryland Court in Kennard A. Smith.

18. Rule 725 b at the time of the indictment and trial, in 1960–1961, read as follows:
"b. *The Motion Raising Defense and Objections*.
"1. Defenses and Objections Which May be Raised by Motion.

and waived his right to question the composition of the petit jury by failing to challenge the array or take other similar action before the jury was sworn.

That point has not been clearly decided by the Maryland Court. In Schowgurow and Madison, discussed in Section I of this opinion, the question of the composition of the respective juries had been timely raised. In Kennard A. Smith the point had been knowingly and intelligently waived. In Hays and Wainwright the defendants had been convicted before the rendition of the opinion in Schowgurow, but their appeals were still pending when that decision was rendered, and the Court of Appeals held that their convictions had not become final on that date. They had not challenged the array of the grand jury, nor moved to dismiss the indictment, nor otherwise raised the point below. The Court discussed Maryland Rule 885 [19] and cases decided under that Rule, but did not refer to Rule 725 b. The Court distinguished Scales v. United States, 4 Cir., 260 F.2d 21 (1958), aff'd 367 U.S. 203, 81 S.Ct. 1469, 6 L.Ed.2d 782 (1961), and other federal cases relied on by the State on the ground that in none of those cases was the law changed after the trial, pending the appeal. The Court concluded "that, under the Maryland law, Rule 885 does not bar the appellants from invoking the principle set forth in Schowgurow, which, by reason of decisions of the Supreme Court of the United States, effected a change in the Maryland law after the appellants' convictions but before final judgment. Because of this holding, we do not reach the other constitutional questions which the appellants raise." In Husk and Hamm, the Maryland Court was faced with a question similar to the question presented here, because in each of those cases the conviction had become final before the rendition of the opinion in Schowgurow, and the matter before the Court of Appeals was an application for leave to appeal from denial of relief under the Post Conviction Procedure Act. In each case the Court of Appeals denied relief on the ground that the principles enunciated in Schowgurow did not apply retroactively to convictions which had become final before the rendition of that opinion; the Court did not discuss the question of waiver.

Respondent notes that Maryland Rule 725 b is similar to Rule 12(b) (2) of the Federal Rules of Criminal Procedure, and that in Wright v. United States, 8 Cir., 165 F.2d 405 (1948), a case involving the exclusion of women jurors, the Court said: "The right to challenge the panel is a right that may be waived and is waived if not seasonably presented. Such rights, if waived during trial, may not be availed of by attack, in a collateral proceeding." And in Scales v. United States, 4 Cir., 260 F.2d 21 (1958), aff'd, 367 U.S. 203, 81 S.Ct. 1469, 6 L.Ed.2d 782 (1961), where the defendant contended that the indictment was invalid because the grand jury was illegally impaneled, in that the panel did not consist of persons whose names were publicly drawn from a box containing the names of not less than three hundred qualified persons, the Court held that the defendants had waived the point by failing to comply with the provisions of Rule 12, F.R.Crim.P.[20]

In Williams v. State of Georgia, 349 U.S. 375, 382, 75 S.Ct. 814, 819, 99 L.Ed.

it to be made within a reasonable time thereafter."

The subsequent amendments thereto have not changed the substance of the rule. See Rule 725 b: "Defenses and Objections Before Trial" in the 1963 Replacement Volume 9B of the Maryland Rules.

19. See note 11, above.

20. See also Notes of Advisory Committee on Rules, Federal Rules of Criminal Pro-

cedure, rule 12 note, 18 U.S.C.A.; Agnew v. United States, 165 U.S. 36, 17 S.Ct. 235, 41 L.Ed. 624 (1897); Gale v. United States, quoted in Section III of this opinion, supra; Poliafico v. United States, 6 Cir., 237 F.2d 97 (1956), cert. den. 352 U.S. 1025, 77 S.Ct. 590, 1 L.Ed.2d 597 (1957); Carruthers v. Reed, 8 Cir., 102 F.2d 933 (1939); United States v. Solomon, S.D.N.Y., 216 F.Supp. 835 (1963).

1161 (1955), the Supreme Court said: "A state procedural rule which forbids the raising of federal questions at late stages in the case, or by any other than the prescribed method, has been recognized as a valid exercise of state power." In that case, where the prejudice to the defendant was clear, and the State procedure permitted a discretionary motion for a new trial to be filed at any time, the Court held that the point should have been considered on its merits by the state courts and remanded the case. Maryland Rule 725 b permits a Maryland court, in its discretion, to grant relief from the waiver. So does Rule 12(b), F.R.Crim. P., but the federal courts have not exercised that discretion to avoid a waiver in cases where no serious danger of prejudice was shown. The difficulty is that the rules prescribed by the Supreme Court are not entirely clear; they change from time to time, and in some respects at least are not the same for direct appellate review of convictions as they are in federal habeas corpus cases. Fay v. Noia, 372 U.S. 391, at 426–435, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). In Henry v. State of Mississippi, 379 U.S. 443, 85 S. Ct. 564, 13 L.Ed.2d 408 (1965), a case involving appellate review, the Supreme Court said that a "litigant's procedural defaults in state proceedings do not prevent vindication of his federal rights unless the State's insistence on compliance with its procedural rule serves a legitimate state interest. In every case we must inquire whether the enforcement of a procedural forfeiture serves such a state interest. If it does not, the state procedural rule ought not be permitted to bar vindication of important federal rights." The Court remanded the case to the Mississippi Court to consider the issue of waiver, noting that the "petitioner might still pursue vindication of his federal claim in a federal habeas corpus proceeding in which the procedural default will not alone preclude consideration of his claim, at least unless it is shown that petitioner deliberately bypassed the orderly procedure of the state courts. Fay v. Noia, supra, at 438," 379 U.S. at 447–448, 452, 85 S.Ct. at 567, 570.

Petitioner in this case testified that he had not raised at his trial the points he is now raising because he did not know of his rights. That testimony is uncontradicted and is probably true. It is also true, as the Maryland Court noted in Hays and Wainwright,[21] that the law in effect before the decision in Schowgurow had been part of the Maryland Constitution for over a century, and if petitioner had objected in the trial court to the method of the selection of the juries, that objection would probably have been overruled by the trial court. But the possibility of such an objection was well known to the Maryland bar, both before and after the decision in Torcaso, and the fact that it was *never* made before Schowgurow shows that the lawyers did not believe the rights of their clients were being prejudiced. They were faced with no such "grisly" choice as were the lawyers in the Negro exclusion cases. See Whitus v. Balkcom, 5 Cir., 333 F.2d 496, at 498–499 (1964). Cf. Hall v. Warden, 4 Cir., 313 F.2d 483, at 496 (1963).

The question of waiver is a problem with many facets, some of which have not been fully developed. In view of this Court's conclusion on the question of retroactivity, see Section V, below, it is not necessary to decide the waiver question in this case.

## V

As we have seen, the Maryland Court held in Schowgurow and Madison that the principles enunciated therein should not be applied retroactively except for convictions which had not become final before the rendition of the Schowgurow opinion. The Court quoted the statement of Mr. Justice Cardozo in Great Northern Railway Co. v. Sunburst Oil & Refining Co., 287 U.S. 358, 364, 53 S.Ct. 145, 148, 77 L.Ed. 360 (1932), that a State "may make a choice for itself between the principle of forward operation

---

21. See note 12, above.

and that of relation backward". A careful reading of all the cases cited, however, shows that although "the Federal Constitution has no voice upon the subject", see 287 U.S. at 364, 53 S.Ct. at 148, in the sense that it does not prescribe an absolute rule of retroaction or non-retroaction, the choice made by the State must not violate due process nor deny a criminal defendant the equal protection of the laws. In Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed. 601 (1965), a habeas corpus case, the Supreme Court held that its decision in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), which required the exclusion in State criminal trials of evidence seized in violation of the search and seizure provisions of the Fourth Amendment, did not operate retrospectively upon cases finally decided prior to the decision in Mapp. After reviewing the earlier cases, the Court said:

"Under our cases it appears * * that the effect of the subsequent ruling of invalidity on prior final judgments when collaterally attacked is subject to no set 'principle of absolute retroactive invalidity' but depends upon a consideration of 'particular relations * * * and particular conduct * * * of rights claimed to have become vested, of status, of prior determinations deemed to have finality'; and 'of public policy in the light of the nature both of the statute and of its previous application.' Chicot County Drainage Dist. v. Baxter State Bank, supra, [308 U.S. 371] at 374 [60 S.Ct. 317 at 319, 84 L.Ed. 329].

"That no distinction was drawn between civil and criminal litigation is shown by the language used not only in Schooner Peggy, supra, [United States v. Schooner Peggy, 1 Cranch 103 [2 L.Ed. 49] (1801)] and Chicot County, supra, but also in such cases as State v. Jones, 44 N.M. 623, 107 P.2d 324 (1940) and James v. United States, 366 U.S. 213 [81 S.Ct. 1052, 6 L.Ed.2d 246] (1961). * * * Thus, the accepted rule today is that in appropriate cases the Court may in the interest of justice make the rule prospective. * * *

"While the cases discussed above deal with the invalidity of statutes or the effect of a decision overturning long-established common-law rules there seems to be no impediment—constitutional or philosophical—to the use of the same rule in the constitutional area where the exigencies of the situation require such an application. It is true that heretofore, without discussion, we have applied new constitutional rules to cases finalized before the promulgation of the rule. Petitioner contends that our method of resolving those prior cases demonstrates that an absolute rule of retroaction prevails in the area of constitutional adjudication. However, we believe that the Constitution neither prohibits nor requires retrospective effect. As Justice Cardozo said, 'We think the Federal Constitution has no voice upon the subject.'

"Once the premise is accepted that we are neither required to apply, nor prohibited from applying, a decision retrospectively, we must then weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation. * * * *" 381 U.S. at 627–628–629, 85 S.Ct. at 1736–1737–1738.

It will be noted that at the end of the second paragraph quoted above the Supreme Court laid down the "accepted rule" which the Court of Appeals of Maryland recognized as controlling and which is binding on this Court, namely, "that in appropriate cases the Court may in the interest of justice make the rule prospective."

At the end of the discussion of retroactivity in Schowgurow, the Maryland Court stated: "In many difficult questions of constitutional law arising from

criminal trials, the protection of the rights of the individual is weighed against the protection of society. Both are basic to ordered liberty. On the matter of retroactivity here involved, the dip of the scales is obvious." 240 Md. at 134, 213 A.2d at 484.

In Hays and Wainwright the Maryland Court said: "In holding in Schowgurow that the legal principle therein set forth should not apply retroactively, we relied, in large part, upon Linkletter v. Walker * * * Basically, the decision as to non-retroactivity in Linkletter rested upon the same broad considerations of public policy which we found controlling in Schowgurow."

The Court quoted in a footnote the following passage from Linkletter:

"Finally, there are interests in the administration of justice and the integrity of the judicial process to consider. To make the rule of Mapp retrospective would tax the administration of justice to the utmost. Hearings would have to be held on the excludability of evidence long since destroyed, misplaced or deteriorated. If it is excluded, the witnesses available at the time of the original trial will not be available or if located their memory will be dimmed. To thus legitimate such an extraordinary procedural weapon that has no bearing on guilt would seriously disrupt the administration of justice." 381 U.S. at 637–638, 85 S.Ct. at 1742.

The quotation applies with even greater force in the present case, where, as in Kennard A. Smith, counsel for petitioner "frankly conceded that, under their contention, not only was the indictment of Smith null and void but that all indictments brought at any time by any grand jury which under [the] decision in Schowgurow, was improperly selected,

were null and void and that any convictions thereunder had no legal effect."

Among the items which the Linkletter opinion stated should be considered in weighing "the merits and demerits in each case" were "the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." 381 U.S. at 629, 85 S.Ct. at 1738, quoted above. The history of the rule in question has been discussed in earlier sections of this opinion, as well as in the Maryland cases. The decisions in Schowgurow and Madison take care of the future. The situation here is similar to that in Dean v. United States, 9 Cir., 169 F.2d 70 (1948), a case involving the exclusion of women from juries, where the Court said: "The practice complained of has been discontinued in the Southern District and there can be no justification for the granting of the motion as a corrective measure."

With respect to convictions which had not become final before the rendition of the opinion in Schowgurow, the Maryland Court noted in Hays and Wainwright that "in Linkletter, the Supreme Court, after a full discussion of the principles involved and of the precedents, held that, despite its declaration of non-retroactivity, the Mapp decision applied to state court convictions which had not become final before rendition of the Mapp opinion. This was the same exception which we made in our declaration of non-retroactivity in Schowgurow." [22]

In the Linkletter opinion the Supreme Court also noted that "in each of the three areas in which we have applied our rule retrospectively the principle that we applied went to the fairness of the trial —the very integrity of the fact-finding process. Here, as we have pointed out, the fairness of the trial is not under attack. All that petitioner attacks is the

22. The Maryland Court continued: "In its discussion of this phase of its opinion in Linkletter, the Supreme Court pointed out that: 'However, we are not here concerned with pure prospectivity since we applied the rule announced in Mapp to reverse Miss Mapp's conviction. That decision has also been applied to cases still pending on direct review at the time it was rendered'." 381 U.S. at 622, 85 S.Ct. at 1733.

admissibility of evidence, the reliability and relevancy of which is not questioned and which may well have had no effect on the outcome." 381 U.S. at 639, 85 S.Ct. at 1743. The exclusion of non-believers from the grand jury which indicted petitioner in the instant case and from the petit jury which found him guilty could have had no greater effect on his indictment and conviction than the admissibility of the evidence in Linkletter had on the outcome of that case. See United States v. Gale, 109 U.S. 65, 3 S.Ct. 1, 27 L.Ed. 857 (1883), Wright v. United States, 8 Cir., 165 F.2d 405 (1948), and other cases cited in Sections II, III and IV of this opinion. In Ballard v. United States, 329 U.S. 187, 67 S.Ct. 261, 91 L.Ed. 181 (1946), the Court did not find that the exclusion of women constituted an inroad on the vital safeguards for a criminal trial so as to involve a denial of due process. No case holding that it did has been cited or found.

The conclusion of the Supreme Court in Linkletter is apposite here: "Though the error complained of might be fundamental it is not of the nature requiring us to overturn all final convictions based upon it." 381 U.S. at 639–640, 85 S.Ct. at 1743.

■ Petitioner contends that his conviction was not final because at the time of the decision in Schowgurow he had previously filed a petition for relief under the Post Conviction Procedure Act, which was pending at the time of that decision and was dismissed without prejudice, as recited in the introductory portion of this opinion. There is no merit in this contention. A petition for relief under the P.C.P.A. "may be filed at any time". Maryland Code, Article 27, section 645A(e). Petitioner's conviction had become final before the rendition of the opinion in Schowgurow. See the opinion in Hays and Wainwright, which cited Bell v. State, 236 Md. 356, 204 A.2d 54 (1964), and Belton v. State, 228 Md. 17, 23, 178 A.2d 409 (1963), and noted that in Linkletter, where a similar announcement of non-retroactivity was made, with the same exception as in

Schowgurow, footnote 5 reads as follows: "By final we mean where the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition for certiorari had elapsed before our decision in Mapp v. Ohio." 381 U.S. at 622, 85 S.Ct. at 1734.

\*

■ This Court concludes and holds that the ruling of the Court of Appeals of Maryland that the principles enunciated in Schowgurow and Madison should not be applied retroactively except for convictions which had not become final before the rendition of the Schowgurow opinion does not violate any provision of the Fourteenth Amendment or any other provision of the Federal Constitution; on the contrary, the ruling was correct; and its application in this case to deny relief to petitioner does not deprive him of due process of law or the equal protection of the laws or any other right under the United States Constitution.

\*

For the reasons stated, the relief prayed is hereby denied and petitioner is remanded to the custody of respondent.