Raymond R. STONE, Petitioner-Appellee,

v.

Louie L. WAINWRIGHT, Director, etc., Respondent-Appellant.

Eugene P. HUFFMAN, Petitioner-Appellee,

v.

James F. TOMPKINS, Respondent-Appellant.

No. 72-3738

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

April 19, 1973.

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York, 5 Cir. 1970, 431 F.2d 409, Part I.

Robert L. Shevin, Atty. Gen., William E. Whitlock, III, Andrew W. Lindsey, Asst. Attys. Gen., William E. Whitlock, III, Tallahassee, Fla., for respondents-appellants.

Lynn E. Wagner, Director, Prisoner Assistance Project, Legal Aid & Defender Clinic, University of Fla., College of Law, Gainesville, Fla., for petitioners-appellees.

Before THORNBERRY, GOLDBERG and RONEY, Circuit Judges.

GOLDBERG, Circuit Judge:

◼ This is an appeal by the State of Florida from the granting of federal habeas relief to two men who had been convicted of violating Florida's "felony sodomy statute," Fla.Stat.Ann. § 800.01. Subsequent to the trials at which petitioners were convicted, the Supreme Court of Florida held Section 800.01 to be "void on its face as unconstitutional for vagueness and uncertainty in its language."[1] The Florida Supreme Court went on in that case, however, to say that its decision was "not retroactive, but prospective only,"[2] and the State now insists that that determination is binding upon the federal courts. We cannot agree. It is always the duty of a federal court to grant habeas relief whenever it independently determines that a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.A. § 2254. We hold that relief under the Great Writ was properly granted when the United States District Court independently and correctly found that the statute under which petitioners were convicted and imprisoned was void.

## I. HISTORY OF THE INSTANT CASES

Petitioner Stone was tried and convicted in 1970 on two counts of violating Section 800.01, Fla.Stat.Ann., and was sentenced to serve consecutive five-year terms of imprisonment. His conviction was affirmed on direct appeal, Stone v. State, 245 So.2d 91 (Fla.Dist.Ct.App. 1970), and the state court's denial of his subsequent motion for post-conviction relief was also affirmed. Stone v. State, 264 So.2d 81 (Fla.Dist.Ct.App.1972), cert. denied, 267 So.2d 329 (Fla.Sup.Ct. 1972). Petitioner Huffman was tried and convicted in 1968 on one count of violating Section 800.01 and was sentenced to serve from six months to ten years imprisonment. Huffman did not appeal from his conviction, but it is not argued

---

1. Franklin v. State, 257 So.2d 21, 24 (Fla. Sup.Ct.1971).

2. *Id.*

that he has failed to exhaust any available state remedies.[3]

The statute under which petitioners were convicted reads as follows:

> *"800.01   Crime against nature; punishment*
>
> "Whoever commits the abominable and detestable crime against nature, either with mankind or with beast, shall be punished by imprisonment in the state prison not exceeding twenty years."

Fla.Stat.Ann. § 800.01. As recently as 1966, the Florida Supreme Court was continuing to adhere to its long line of cases upholding the constitutionality of this statute in the face of repeated challenges urging that it was impermissibly vague and failed to afford persons in Florida notice of precisely what acts constituted violations of the statute. *See, e. g.*, Delaney v. State, 190 So.2d 578 (Fla.Sup.Ct.1966); Lason v. State, 152 Fla. 440, 12 So.2d 305 (Fla.Sup.Ct. 1943). Thus, at the time petitioners were convicted, the State of Florida considered its statute to be free of constitutional infirmity.

After the dates on which petitioners were convicted and before petitioners filed these consolidated actions, the Florida Supreme Court rendered its decision in Franklin v. State, 257 So.2d 21 (Fla.Sup.Ct.1971), declaring the statute void for vagueness. The Florida Supreme Court explicitly limited its decision to prospective application, and as a result, the State has subsequently denied one of the instant petitioners any relief under *Franklin*.[4]

Petitioners thereafter filed the instant habeas actions in the United States District Court. Although the wording of their *pro se* petitions was somewhat imprecise, petitioners were clearly seeking relief on allegations that their confinement was in contravention of the United States Constitution.[5] The United States District Judge agreed that the statute was too vague in its wording to withstand constitutional scrutiny:

> "On the merits, it is clear that § 800.-01, which makes it a felony to commit 'the abominable and detestable crime against nature,' suffers from the constitutional defect of vagueness in violation of due process. Severson v. Duff, 322 F.Supp. 4 (M.D.Fla.1970); Franklin v. State, *supra*."

Habeas relief was accordingly granted by the court below, and the question now before us is whether that action was proper.

---

3.  Apparently acting in the light of Florida's refusal to apply Franklin v. State, *supra* note 1, the case finding § 800.01 void, retroactively, *see* Stone v. State, 264 So.2d 81 (Fla.Dist.Ct.App.1972), the United States District Court specifically found that both Huffman and Stone have exhausted all available state remedies.

4.  *See* note 3 *supra*.

5.  Petitioner Stone alleged, *inter alia:*
    "Florida Statutes, chapter 800.01 et seq., applied or on its face is unconstitutional because of being too overly vague, indefinite, indistinct, etc., as to not apprise one of the nature and cause of accusation as well as 'fails to give a person of ordinary intelligence [notice] that his contemplated conduct is forbidden by the statute,' United States v. Harriss, 347 U.S. 612, 617 [, 74 S. Ct. 808, 98 L.Ed. 989] (1942) [*sic,* 1954]; Lanzetta v. New Jersey, 306

U.S. 451, 453 [, 59 S.Ct. 618, 83 L.Ed. 888] (1939), constituting a violation of due process under Fourteenth Amendment. Florida Supreme Court voided the statute but refused to hold it retroactive. See Franklin v. State . . . But in Ex parte Siebold, 100 U.S. 371, 376–377 [25 L.Ed. 717,] U. S. Supreme Court held: 'An unconstitutional law is void, and is as no law. An offense created by it is not a crime.' There is no legal cause for petitioner's imprisonment under this *void* law."
    Petitioner Huffman alleged, *inter alia:*
    "Florida Statute, chapter 800.01, is unconstitutional for vagueness and overbreadth inasmuch as it fails to inform the average person of common intelligence as to what is prohibited so that one need not speculate as to the statutory meaning. See Franklin v. State, 257 So.2d 21 (Fla.1971)."

## II. "SODOMY STATUTES" UNDER THE CONSTITUTION

Statutes prohibiting consensual sodomy have increasingly come under constitutional attack in recent years.[6] The challenges that have been brought fall into a wide variety of imaginative theories that can be categorized in two general groups. The first grouping is premised on the theory that the state is without power to regulate consensual sodomy and other sexual activities between or among consenting adults. Specific arguments that have been advanced include allegations that such statutes unconstitutionally (1) invade a penumbral right to privacy,[7] (2) establish a religion by promoting nonsecular religious morals,[8] (3) impose cruel and unusual punishment by penalizing a condition (homosexuality),[9] (4) impinge First Amendment expressional freedoms,[10] and (5) violate due process standards by criminalizing conduct absent either a "rational basis" or a "compelling state interest." [11]

The second general category of attacks against sodomy statutes consists of arguments that admit that the state may permissibly regulate some instances of consensual sodomy but argue that the particular statute involved is constitutionally defective. Perhaps the most common example of this argument is the theory that marital privacy is protected by the Constitution [12] and that therefore any statute that could be or is used to prosecute married persons is unconstitutionally overbroad.[13] Another example is the attack based on the vagueness with which the acts sought to be proscribed are often defined. The term "sodomy" originated in the Bible [14] and appears in the common law,[15] but the various states have, perhaps for euphemistic reasons, selected terms even more arcane than "sodomy," such as "buggery" or "the crime against nature." [16] Thus, when the common citizen is faced with prosecution under a statute employing such indefinite phraseology,[17] he may argue that due process is violated

6. *See generally*, Note, 49 Texas L.Rev. 400 (1971).

7. *E. g.*, Buchanan v. Batchelor, N.D.Tex. 1970, 308 F.Supp. 729, vacated sub nom. Wade v. Buchanan, 401 U.S. 989, 91 S. Ct. 1221, 28 L.Ed.2d 526, *noted in* 49 Texas L.Rev. 400 (1971); Cotner v. Henry, 7 Cir. 1968, 394 F.2d 873 (dictum), cert. denied, 393 U.S. 847, 89 S. Ct. 132, 21 L.Ed.2d 118; Towler v. Peyton, W.D.Va.1969, 303 F.Supp. 581 (right to privacy issue not reached because conviction was for forceful sodomy).

8. Note, 49 Texas L.Rev. 400, 405 (1971).

9. Perkins v. North Carolina, W.D.N.C. 1964, 234 F.Supp. 333, 336–337 (dictum).

10. Raphael v. Hogan, S.D.N.Y.1969, 305 F.Supp. 749 (on-stage acts of sodomy during a performance of the play "Che!").

11. This argument was advanced in Buchanan v. Batchelor, *supra* note 7, and Dawson v. Vance, S.D.Tex.1971, 329 F. Supp. 1320.

12. *See, e. g.*, Comment, The Bedroom Should Not Be Within the Province of the Law, 4 Cal.W.L.Rev. 115 (1968).

13. The specific holding of the lower court in Buchanan v. Batchelor, *supra* note 7, was that the Texas statute prohibiting sodomy is unconstitutionally overbroad in proscribing private, consensual acts of married couples. The prosecutions in both Cotner v. Henry, *supra* note 7, and Towler v. Peyton, *supra* note 7, involved marital sodomy.

14. *E. g.*, Genesis 13:13; *id.* 18:20. *See also* Leviticus 18:22 ("Thou shalt not lie with mankind, as with womankind: it is abomination.").

15. *E. g.*, Regina v. Jacobs, R. & R. C. C. 331 (1817). For a concise history of early British law regarding sodomy see Comment, *supra* note 12, at 115–16.

16. The terms employed by the various states are compiled at Comment, *supra* note 12, at 116.

17. The State does not dispute that more precise and understandable words are available. *See, e. g.*, Note, *supra* note 8, at 400 n. 10. *See also* Vernon's Tex. Penal Code Ann. art. 524 (1952).

inasmuch as the statute is so vague and lacking in ascertainable standards of guilty conduct as to be incapable of giving a person of ordinary intelligence fair notice that his contemplated conduct is forbidden.[18] *See* Palmer v. City of Euclid, 1971, 402 U.S. 544, 91 S.Ct. 1563, 29 L.Ed.2d 98; United States v. Harriss, 1954, 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989; Lanzetta v. New Jersey, 1939, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888.

The application of these arguments and theories to specific factual situations is often difficult and confusing, involving considerable overlapping and duplication. We think it clear beyond peradventure, however, that the instant appeal presents only an attack on the vagueness found by the District Court to be present in Section 800.01.

## III. THE FEDERAL DISTRICT COURT'S DETERMINATION THAT SECTION 800.01 IS UNCONSTITUTIONALLY VAGUE

Almost fifty years have passed since the Supreme Court of the United States penned the classic statement regarding the level of linguistical vagueness that a criminal statute must exceed if it is to satisfy due process standards:

> "[That the words of a criminal statute] must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties, is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law. And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law."

Connally v. General Construction Co., 1926, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322, 328. In subsequent years, the Supreme Court has many times had occasion to restate the rule, as when it said:

> "It is the statute, not the accusation under it, that prescribes the rule to govern conduct and warns against transgression. No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids."

Lanzetta v. New Jersey, *supra*, 306 U.S. at 453, 59 S.Ct. at 619, 83 L.Ed. at 890 (citations omitted). *See also* Palmer v. City of Euclid, *supra*; United States v. Harriss, *supra*.

The standard by which the Constitution requires criminal statutes to be judged is clear. Here, the United States District Judge considered the language of section 800.01 and found it to be fatally vague. In making this determination, Judge McRae's independent federal finding that the statute fails to advise those who may be convicted under it of precisely what behavior is proscribed was neither new or unsupported. In fact, the Supreme Court of Florida had previously found that this precise statute's terminology is impermissibly indefinite. In a thoughtful and well-reasoned opinion, the Florida high court stated as follows:

> "We have over a long period of time upheld the statute despite earlier constitutional challenges. We are persuaded that these holdings and this statute require our reconsideration. One reason which makes this apparent is the transition of language over the span of the past 100 years of this law's existence. The change and upheaval of modern times are of drastic proportions. People's understandings of subjects, expressions and experiences are different than they were even a decade ago. The fact of these changes in the land must be taken into account and appraised. Their effect and the reasonable reaction and

18. *E. g.*, Franklin v. State, 257 So.2d 21 (Fla.Sup.Ct.1971).

understanding of people today relate to statutory language.

"The blindfold upon our Lady of Justice is symbolic of impartiality, as being blind to all outside influences which would divert from the material facts and law applicable to the case in which justice is being sought upon its merits. Her blindfold in no wise suggests that justice should be blind to the facts of life and of the times in which it functions; for the law, to be vibrant, must be a living thing, responsive to the society which it serves, and to which that society looks as the last true depository of truth and justice.

"A further reason dictating our reexamination here is the expansion of constitutional rulings on the invasion of private rights by state intrusion which must be taken into account in the consideration of this statute's continuing validity. The language in this statute could entrap unsuspecting citizens and subject them to 20-year sentences for which the statute provides. Such a sentence is equal to that for manslaughter and would no doubt be a shocking revelation to persons who do not have an understanding of the meaning of the statute."

Franklin v. State, 257 So.2d 21, 23 (Fla.Sup.Ct.1971) (citations omitted).

■ As did the District Court, we agree with the Florida Supreme Court that the words "abominable and detestable crime against nature" are fatally vague. Convictions obtained under this statute, rendered void by its vagueness, are repugnant to the Constitution and cannot stand. We hold that the United States District Court properly reached an independent conclusion that the language of this particular statute is fatally vague and that imprisonment pursuant to a conviction under Section 800.-01 contravenes the Constitution's guarantee of due process.

## IV. INDEPENDENCE OF THE FEDERAL HABEAS POWER

Although this appeal is disposed of and affirmed by what we have thusfar stated, the vigor with which the briefs filed on behalf of the State of Florida argue certain other issues said to be present in this appeal justifies a few additional words. We have carefully considered the three remaining arguments that the State weaves throughout its briefs, and we conclude that each is without legal merit. The essential difficulty with these issues is that each misconceives the precise nature of the trial court's holding.

■ First, the State argues that it is improper for a federal court to "apply" that part of the *Franklin* decision that holds Section 800.01 unconstitutional while "ignoring" that portion of the Florida opinion that states the holding is prospective only. We do not find that this is what the federal habeas court actually did; rather, we view the action below as being an independent federal determination that Section 800.01 is void for vagueness. The federal judge was guided and buoyed in his resolution of this question by the sagacious words of the Florida Supreme Court, but the decision was nonetheless a federal judge's independent determination of a question under the federal Constitution.

■ Second, the State presents the unusual argument that because the Florida Supreme Court has already "voided" the statute, "there was nothing for the District Court to hold unconstitutional . . . an unconstitutional statute in a criminal area is to be considered no statute at all." This argument misconceives the nature of a petition for a writ of habeas corpus. Petitioners were not asking for a "second" declaratory judgment that Section 800.01 was fatally vague—they sought release from confinement in prison, a confinement that rested solely on violations of what the State says is "no statute at all." The District Court did not order relief be-

cause petitioners were held under a statute that was voided by the Florida courts; rather, the court below ordered petitioners released because they were being held in physical custody pursuant to convictions of violating a statute that the federal court found to be repugnant to the Fourteenth Amendment.

■ Third, the State argues that the federal courts are "bound" by state court decisions regarding the retroactivity of state court holdings. We find that none of the cases cited by the State on this issue are relevant to the case before us.[19] The cases sought to be relied upon involve either questions of non-constitutional dimension[20] or instances where the relief sought is retrial under the new decisional pronouncement.[21] Here, however, petitioners assert a constitutional right to be totally free from prosecution under a void criminal statute. The usual considerations present in retroactivity cases, such as the degree the state will be burdened by a requirement that it re-conduct a host of trials, are simply not present.[22] Under our decision the State of Florida is not prevented from re-enacting a "sodomy statute" that meets the Constitution's demand for terminological specificity—but Section 800.01 being void, the State may not retry petitioners. Indeed, the instant case is little more than a situation where persons are currently confined pursuant to convictions obtained under a statute that has been determined by the federal court to have been void at the time petitioners performed the acts said to have violated it. Cast in those terms, there can be little question that relief was surely appropriate.

Finally, underlying the State's position in this appeal is the implicit argument that although the federal court could grant habeas relief upon finding that the statute offends the Constitution if the Florida courts had found no constitutional infirmity in the statute, the federal court is somehow divested of its habeas power by the State court's decision that the statute is unconstitutional. To support this implication, the State makes repeated reference to the *Franklin* case being nothing but a "matter of procedure." Such an argument cannot prevail:

"[T]he doctrine under which state procedural defaults are held to constitute an adequate and independent

---

19. Linkletter v. Walker, 1965, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601; Great Northern Ry. v. Sunburst Oil & Refining Co., 1932, 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360; Smith v. Maryland, 4 Cir. 1966, 362 F.2d 763; Redd v. Decker, 5 Cir. 1971, 447 F.2d 1346; Smith v. Brough, D.Md.1965, 248 F.Supp. 435.

20. Great Northern Ry. v. Sunburst Oil & Refining Co., *supra* note 19 (a state's non-constitutional decisions may constitutionally be denied retroactive application); Redd v. Decker, *supra* note 19 (non-constitutional evidentiary decisions may be denied retroactive application).

21. Linkletter v. Walker, *supra* note 19 (one species of the exclusionary rule may be denied retroactive application); Smith v. Maryland, *supra* note 19 (requirement that non-believers not be excluded from jury service may be denied retroactive application); Smith v. Brough, *supra* note 19 (Smith v. Maryland in District Court).

22. *See generally* Vacarro v. United States, 5 Cir. 1972, 461 F.2d 626 (1972), where Chief Judge Brown wrote a scholarly and probing opinion analyzing the state of the law regarding retroactivity. Surveying the entire body of the relevant law, particularly as developed in the Supreme Court, Chief Judge Brown concluded:
"We distill from this whole body of cases the Court's value judgment that people are not to be punished for the same offense twice, are not to be punished at all for actions which are constitutionally immune from punishment, and are not to be punished by procedures which present 'a serious risk that the issue of guilt or innocence may not have been reliably determined,' or which produce a 'clear danger of convicting the innocent.' Practices, procedures or *statutes* which present the probability or risk of such consequences must be eradicated and the surest way is to prescribe retroactivity."
461 F.2d at 633 (emphasis added, footnotes omitted).

state law ground barring direct Supreme Court review is not to be extended to limit the power granted the federal courts under the federal habeas statute."

Fay v. Noia, 1963, 372 U.S. 391, 399, 83 S.Ct. 822, 827, 9 L.Ed.2d 837, 845.

■ Fay v. Noia reached the Supreme Court in a different posture than that in which the instant appeal comes before us, but Fay v. Noia speaks so thoroughly to the independence of the federal habeas power that we are much guided by it. The Supreme Court has removed from the jurisprudence any notion that a state court's determination of federal constitutional rights must be given binding weight.[23] Florida thus cannot argue that its determination regarding retroactivity of the *Franklin* holding ousts federal habeas jurisdiction. "The jurisdictional prerequisite is . . . detention simpliciter." Fay v. Noia, *supra*, 372 U.S. at 430, 83 S.Ct. at 844, 9 L.Ed.2d at 864.

The Great Writ is one of the most precious creations of our Anglo-American heritage. As guardians of the rights that the Constitution secures to every person, regardless of his station in life, we must be ever vigilant that the availability of the Writ is never diminished. The propriety of its use in the instant case is indisputable:

"[Behind the seemingly extravagant expressions regarding the Great Writ] may be discerned the unceasing contest between personal liberty and government oppression. It is no accident that habeas corpus has time and again played a central role in national crises, wherein the claims of order and of liberty clash most acutely, not only in England in the seventeenth century, but also in America from our very beginnings, and today. Although in form the Great Writ is simply a mode of procedure, its history is inextricably intertwined with the growth of fundamental rights of personal liber-

ty. For its function has been to provide a prompt and efficacious remedy for whatever society deems to be intolerable restraints. Its root principle is that in a civilized society, government must always be accountable to the judiciary for a man's imprisonment: if the imprisonment cannot be shown to conform with the fundamental requirements of law, the individual is entitled to his immediate release. Thus there is nothing novel in the fact that today habeas corpus in the federal courts provides a mode for the redress of denials of due process of law. Vindication of due process is precisely its historic office."

Fay v. Noia, 372 U.S. at 401–402, 83 S. Ct. at 829, 9 L.Ed.2d at 846–847.

With all due deference to the sovereignty of states, the power is not given unto any state to suspend, limit, or condition with prospectivity a *constitutional* right such as that before us. As was said long ago, it is a federal Constitution we are expounding. *See* McCulloch v. Maryland, 1819, 17 U.S. [4 Wheat.] 316, 407, 4 L.Ed. 579, 602. Florida cannot veto, nullify, or suspend a right that the Constitution grants to all persons, and the revered Writ is ever at the ready to answer the distress calls of its wards.

Affirmed.

RONEY, Circuit Judge, (specially concurring):

I concur in the disposition of this case on our Summary Calendar only because the Supreme Court of Florida has held that the statute under which the defendants were convicted is constitutionally *void on its face.*

The statute, § 800.01, is void on its face as unconstitutional for vagueness and uncertainty in its language, violating constitutional due process to the defendants.

Franklin v. State, 257 So.2d 21, 24 (Fla.1971).

**23.** Fay v. Noia, *supra*, at §§ II, III.

The State has not argued in its brief that the statute can withstand the due process requirements of the United States Constitution. Nor, as pointed out by Judge Goldberg, has the State cited any authority which could support a denial of habeas corpus relief by the District Court to defendants who have been convicted under a statute which has been determined to be too vague and uncertain on its face to charge *any* crime.