IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
February 22, 2017 Session

## STATE OF TENNESSEE v. KAYLECIA WOODARD

**Appeal from the Criminal Court for Knox County**
**No. 104200     Steve Sword, Judge**

_____

### No. E2016-00676-CCA-R3-CD
_____

The defendant, Kaylecia Woodard, appeals her Knox County Criminal Court jury conviction of aggravated robbery, arguing that the evidence is insufficient to support her conviction and that the criminal gang enhancement statute, which was applied to enhance her sentence, is unconstitutional. We discern no infirmity relative to the guilt phase of the defendant's trial and affirm the defendant's conviction of aggravated robbery. Because, as this court has now repeatedly concluded, that portion of the criminal gang enhancement statute used to enhance the defendant's sentence is unconstitutional, we vacate the criminal gang enhancement and the 15-year sentence, modify the judgment to reflect a Class B felony conviction of aggravated robbery, and remand the case for resentencing.

**Tenn. R. App. P. 3; Judgments of the Criminal Court Affirmed in Part; Reversed in Part; Modified; Remanded**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT H. MONTGOMERY, JR., JJ., joined.

Forrest L. Wallace (on appeal), and Douglas A. Trant (at trial), Knoxville, Tennessee, for the appellant, Kaylecia Woodard.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Charme P. Allen, District Attorney General; and TaKisha Fitzgerald, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant's conviction relates to the June 16, 2014 robbery of the Grocery and Tobacco Market on Maryville Pike in Knoxville. On that date, Anthony

Smith robbed the store clerk, Mohammed Islam, at gunpoint. Mr. Islam described the offense at trial:

> What actually happened is I am working and my employee called me, I was talking to them. And one guy – with the bandana, he pull out the gun in front of me and said give the money. I said like two times, Hey, you play with me like I don't believe it two times. And third time merely I'm upset and I have the money so I give him the money. And one lady is outside walking.

Store employee Michael Puri was on the telephone with Mr. Islam when he overheard someone "say give me all the money." Mr. Puri, who was visiting a friend in nearby Montgomery Village, ran toward the store. As he ran, he noticed an "out of place" vehicle "on the side street." He said that he knew "the two families that live in the houses right there next to that street very well and . . . knew that that car wasn't supposed to be there." He saw "that the driver was really on the steering wheel," which made him assume "that that could be the people that robbed" the convenience market. He "also noticed there was somebody in the back seat scuffling trying to maybe take off clothes." Because he thought the car might be involved in the robbery, he shouted out the license plate number, which was then taken down by "neighbors." Mr. Puri identified a photograph of the defendant as a person who "could fit the description of the driver" but admitted during cross-examination that he could not positively identify the defendant.

Nineteen-year-old Anthony Smith testified that he committed the robbery at the Grocery and Tobacco Market with the assistance of the defendant and Timeya Harris. He said that the defendant planned the robbery, provided the handgun used in the robbery, and acted as the driver. Mr. Smith identified text messages he exchanged with the defendant while planning the robbery. Ms. Harris testified and confirmed Mr. Smith's testimony that the defendant planned the robbery and provided the handgun that Mr. Smith used to commit the robbery.

After committing the robbery, Mr. Smith returned to the defendant's car and returned the gun to the defendant, who wiped the gun and put it into her backpack. Mr. Smith, Ms. Harris, and the defendant split the proceeds of the robbery three ways. Mr. Smith then changed clothes in the backseat of the defendant's car and put his clothes into his backpack. Ms. Harris removed the black hat and black polo shirt she had worn during the robbery. The defendant then drove to Montgomery Village, where they visited briefly with Ms. Harris's sister. As they left, the police stopped the car.

Knoxville Police Department Officer Dana Crocker effectuated a "felony stop" of a vehicle being driven by the defendant after confirming that it met the description of the getaway vehicle described by Mr. Puri. Both Mr. Smith and Ms. Harris were passengers in the vehicle. Inside the vehicle, Officer Crocker "observed a backpack in the rear seat . . . and it was open." Inside the backpack she saw "red sweat pants, sweat shirt, which is what the information was given through dispatch . . . that one of the suspects had red on at the time of the incident." Mr. Smith confirmed that that backpack and clothing belonged to him. Officers found a second backpack, which Ms. Harris identified as belonging to the defendant, in the trunk of the car. That bag contained the loaded .22 caliber revolver identified by Mr. Smith as the weapon used in the robbery and personal items belonging to the defendant, including the defendant's iPhone and pieces of mail addressed to her.

Based upon this evidence, the jury convicted the defendant as charged of alternative counts of aggravated robbery.

In a bifurcated proceeding, Ms. Harris testified that the defendant was a member of the 127 Athens Park Bloods criminal gang. Ms. Harris recalled that, following a 30-day "observation" period, the defendant was "jumped in" to the Athens Park Bloods, leaving the defendant with "two black eyes." After that, the defendant carried a red bandana as a symbol of her gang membership. Ms. Harris testified that the defendant attempted to recruit her and Mr. Smith into the Athens Park Bloods.

The State presented certified copies of convictions of other members of the Athens Park Bloods: Eric Burney (aggravated assault), Dwight Schooler (possession with intent to sell less than .5 grams of cocaine), Justin Jackson (aggravated assault), Jefferson Grady (aggravated burglary), Zachary Siler (attempted especially aggravated robbery), Anthony Page (attempted possession with intent to sell cocaine), Antoneo Williams (attempted first degree murder), and Dayquan Shannon (aggravated robbery and unlawful weapons possession).

Mr. Smith testified that he was a member of the Four Hundred Block Tree Top Piru, an affiliate of the Bloods criminal gang, and that the defendant was a member of the 127 Athens Park Bloods, a separate affiliate of the Bloods. He identified text messages between him and the defendant concerning membership in their gangs and a gang-related shooting. In the messages, Mr. Smith told the defendant that he wanted to leave the Four Hundred Block Tree Top Piru "because they jumped" him and wanted to join the 127 Athens Park Bloods. He told the defendant that he wore his "red flag," or red bandana, as proof of his allegiance to the Bloods.

Knox County Sheriff's Office Gang Intelligence Unit Officer Thomas Walker testified as an expert witness on criminal gang culture. Officer Walker said that the Athens Park Bloods originated in the Rosedale community on the west side of Los Angeles in the early 1970s and that each block of Figueroa Boulevard between 120th Street to 127th Street "has its own click." The Athens Park Bloods eventually made their way to Knoxville via Atlanta sometime in 2009. He explained that "Folk Nation" and "People Nation" are the rival gangs at the top of the criminal gang hierarchy in the United States. The Bloods, he said, fall within the People Nation, and the Athens Park Bloods fall within the Bloods. Within the Athens Park Bloods, "there are seven different clicks" in Knoxville. Other gangs affiliated with the Bloods in Knoxville include the Tree Top Pirus and the East Side Bloods.

Officer Walker testified that he and other members of the Gang Intelligence Unit keep track of 1,503 known gang members in Knox County. He verified that his unit had confirmed that Messrs. Burney, Schooler, Jackson, Grady, Siler, Page, Williams, and Shannon were members of the Athens Park Bloods. He said that the defendant had been "confirmed as an Athens Park Blood gang member" going by "the street name Lady Park." He explained, "We have her with graffiti, picture of her throwing a hand sign, wearing gang colors, known gang association, federal criminal history, outside jurisdictional information . . . . And then arrested on a violent crime." The defendant's Facebook page also included the name Lady Park and featured a photo of her making a gang sign and a list of her Facebook friends included several known members of the Athens Park Bloods. Officer Walker testified that he had no file on Ms. Harris but did have Mr. Smith as a confirmed member of Four Hundred Block Tree Top Piru, "which is another Blood set."

Based upon this evidence, the jury found that the defendant was a criminal gang member and that she had committed a criminal gang offense.

Following a sentencing hearing, the trial court imposed a Range I, Class A felony sentence of 15 years, to be served at 85 percent by operation of law. The defendant filed a timely but unsuccessful motion for new trial followed by a timely notice of appeal.

In this appeal, the defendant contends that the evidence was insufficient to support both her conviction of aggravated robbery and the jury's finding that she was a member of a criminal gang. Additionally, the defendant asserts that Tennessee Code Annotated section 40-35-121 is unconstitutional on its face because it is overbroad so as to impinge upon her constitutional right to freedom of speech and because it offends principles of due process.

-4-

*I. Sufficiency*

The defendant argues that the evidence was insufficient to support the underlying conviction of aggravated robbery because the State failed to introduce sufficient evidence to corroborate the testimony of Mr. Smith and Ms. Harris. She also argues that the State failed to introduce sufficient corroboration of the accomplice testimony during the gang enhancement phase, rendering the evidence of her membership in the Athens Park Bloods insufficient.

We review the defendant's claim of insufficient evidence mindful that our standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011).

When examining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Id.* Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

It is well settled "that a conviction may not be based solely upon the uncorroborated testimony of an accomplice to the offense." *State v. Bane*, 57 S.W.3d 411, 419 (Tenn. 2001) (citing *State v. Stout*, 33 S.W.3d 531 (Tenn. 2001); *State v. Bigbee*, 885 S.W.2d 797, 803 (Tenn. 1994); *Monts v. State*, 379 S.W.2d 34, 43 (Tenn. 1964)). Indeed, "[w]hen the only proof of a crime is the uncorroborated testimony of one or more accomplices, the evidence is insufficient to sustain a conviction as a matter of law." *State v. Jones*, 450 S.W.3d 866, 888 (Tenn. 2014) (citing *State v. Collier*, 411 S.W.3d 886, 894 (Tenn. 2013) (citing *State v. Little*, 402 S.W.3d 202, 211–12 (Tenn. 2013)). By way of explanation, our supreme court has stated:

> There must be some fact testified to, entirely independent of the accomplice's testimony, which, taken by itself, leads to the inference, not only that a crime has been committed, but also that the defendant is implicated in it; and this

> independent corroborative testimony must also include some fact establishing the defendant's identity. This corroborative evidence may be direct or entirely circumstantial, and it need not be adequate, in and of itself, to support a conviction; it is sufficient to meet the requirements of the rule if it fairly and legitimately tends to connect the defendant with the commission of the crime charged. It is not necessary that the corroboration extend to every part of the accomplice's evidence.

*Bane*, 57 S.W.3d at 419 (quoting *Bigbee*, 885 S.W.2d at 803); *see also State v. Fowler*, 373 S.W.2d 460, 463 (Tenn. 1963).

The State concedes, and the evidence unquestioningly establishes, that both Mr. Smith and Ms. Harris were accomplices. Both admitted their participation in the offense at trial, and both pleaded guilty to a charge of aggravated robbery.

### A. Aggravated Robbery

As charged in this case, aggravated robbery is "robbery as defined in § 39-13-401 . . . [a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." T.C.A. § 39-13-402(a)(1). "Robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear." *Id.* § 39-13-401(a). "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." *Id.* § 39-14-103(a). A deadly weapon is defined as "[a] firearm or anything manifestly designed, made or adapted for the purpose of inflicting death or serious bodily injury; or [a]nything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id.* § 39-11-106(a)(5).

Moreover, "[a] person is criminally responsible as a party to an offense, if the offense is committed by the person's own conduct, by the conduct of another for which the person is criminally responsible, or by both." T.C.A. § 39-11-401(a). Additionally, criminal responsibility for the actions of another arises when the defendant, "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, . . . solicits, directs, aids, or attempts to aid another person to commit the offense." *Id.* § 39-11-402(2); *see State v. Lemacks*, 996 S.W.2d 166, 170 (Tenn. 1999) ("As reflected in this case, criminal responsibility is not a separate, distinct crime. It is solely a theory by which the State may prove the defendant's guilt of the alleged offense . . . based upon the conduct of another person.").

-6-

Mr. Smith and Ms. Harris testified that the defendant planned the robbery, provided the weapon, and acted as the driver. Mr. Puri testified that he observed a woman behind the wheel of a suspicious vehicle immediately after the robbery, and although he did not positively identify the defendant as the driver, he confirmed that a photograph of the defendant "could fit the description of the driver." When Officer Crocker stopped the vehicle a short time later, the defendant was driving and Mr. Smith and Ms. Harris were passengers. Officers found a backpack in the trunk of the vehicle that contained personal items belonging to the defendant and the .22 caliber revolver used in the robbery. In our view, Mr. Puri's testimony as well as the discovery of the weapon inside the defendant's backpack "fairly and legitimately tends to connect" the defendant to the robbery of the Grocery and Tobacco Market and corroborates the accomplice testimony. *Little*, 402 S.W.3d at 212. In consequence, we find the evidence sufficient to support the defendant's conviction of aggravated robbery.

### B. Gang Enhancement

The version of Tennessee Code Annotated section 40-35-121 in effect at the time of the offense in this case defined "'[c]riminal gang'" as

> a formal or informal ongoing organization, association or group consisting of three (3) or more persons that has:
>
> > (A) As one (1) of its activities the commission of criminal acts; and
> >
> > (B) Two (2) or more members who, individually or collectively, engage in or have engaged in a pattern of criminal gang activity;

T.C.A. § 40-35-121(a)(1)(2014).[1] "'Criminal gang member'" is defined as

> a person who is a member of a criminal gang, as defined in subdivision (a)(1), who meets two (2) or more of the following criteria:
>
> > (A) Admits to criminal gang involvement;

---

[1] This version of the statute became effective on July 1, 2013. *See* 2013 Pub. Acts, c. 357, §§ 1 to 3; 2013 Pub. Acts, c. 415, § 1.

(B) Is identified as a criminal gang member by a parent or guardian;

(C) Is identified as a criminal gang member by a documented reliable informant;

(D) Resides in or frequents a particular criminal gang's area, adopts their style or dress, their use of hand signs or their tattoos and associates with known criminal gang members;

(E) Is identified as a criminal gang member by an informant of previously untested reliability and the identification is corroborated by independent information;

(F) Has been arrested more than once in the company of identified criminal gang members for offenses that are consistent with usual criminal gang activity; or

(G) Is identified as a criminal gang member by physical evidence such as photographs or other documentation;

*Id.* § 40-35-121(a)(2). As charged in this case, "'[c]riminal gang offense' means" "[t]he commission . . . of . . . [a]ggravated robbery, as defined in § 39-13-402." *Id.* § 40-35-121(a)(3)(B)(x). "A criminal gang offense committed by a defendant who was a criminal gang member at the time of the offense shall be punished one (1) classification higher than the classification established by the specific statute creating the offense committed." *Id.* § 40-35-121(b).

The defendant concedes that the Athens Park Bloods qualify as a criminal gang and that aggravated robbery qualifies as a criminal gang offense. She argues, however, that the State failed to establish that she was a member of the Athens Park Bloods. The jury found that the defendant was a criminal gang member based upon its findings that the defendant "[r]esides in or frequents a particular criminal gang's area, adopts their style or dress, their use of hand signs or their tattoos and associates with known criminal gang members" and that she "[i]s identified as a criminal gang member by physical evidence such as photographs or other documentation." *See id.* § 40-35-121(a)(2)(D), (G).

In our view, the evidence was sufficient to support these findings. Both Mr. Smith and Ms. Harris testified that the defendant was a member of the Athens Park

-8-

Bloods, and their testimony was corroborated by other evidence in the record. Text messages exchanged by the defendant and Mr. Smith include several references to the Athens Park Bloods and the defendant's membership in the gang. Officer Walker testified that the defendant had been "confirmed" by the Gang Intelligence Unit as a member of the Athens Park Bloods who used the street name "Lady Park." He explained that gang members often used "Park or Blood or Athens in part of their street names as they go." Officer Walker identified photographs from her Facebook page that showed the defendant making a hand gesture "which is West Side, which stands for the west coast or on the west side of LA." He said that the hand sign "is standard for the Athens Park[] Bloods to use west or west up . . . basically showing homage to . . . West Coast or the west side of LA." Her list of Facebook friends also included several known members of the criminal gang.

## II. Constitutionality of Code Section 40-35-121

The defendant asserts that Code section 40-35-121(a)(2)(D) and (G), the applicable portions of the statute which define "criminal gang member" are both unconstitutionally vague and overbroad, arguing that the statute "defines behavior so broadly that it includes regulation of both undesirable and constitutionally protected conduct." She contends that the statute offends the first amendment because it criminalizes "otherwise protected speech," observing that "[n]icknames, clothing, hand signs and tattoos are used by many people in a variety of constitutionally protected contexts, to express a point of view and communicate with others." In addition to these challenges, the defendant raises a facial challenge to Code section 40-35-121(b), arguing that that portion of the statute lacks a sufficient nexus between the sentencing enhancement and the legislative purpose of curtailing illegal gang activity. The State argues that the defendant has waived her right to challenge the constitutionality of the applicable statutory provisions by failing to raise a constitutional challenge prior to trial.

We address first the State's claim that the defendant has waived plenary review of her constitutional challenges by failing to challenge the constitutionality of the statute prior to her trial. The defendant concedes that she failed to challenge the constitutionality of the gang enhancement statute prior to trial but notes that she did so in her motion for new trial, which gave the trial court an opportunity to pass on the constitutionality of the statute. Thus, she says, she has not waived our consideration of this issue. In the alternative, she urges this court to consider the constitutionality of the statute under plain error review.

In her motion for new trial, the defendant alleged that "[t]he gang enhancement as applied to her was unconstitutional. It was unconstitutionally vague and overbroad." The defendant did not present evidence at the hearing on her motion,

-9-

choosing instead to stand on the allegations in her motion. Her counsel reiterated the claim that the gang enhancement statute was unconstitutional, noting that he had challenged the constitutionality of the gang enhancement statute "many times before this court" on "the same basis." The trial court ruled,

> As to the constitutionality of the gang statute, I've ruled on that before that I think it is constitutional. The – if there is a problem with the gang statute, I think it's the pre-2013 where it's a little more morphosed [sic]. In 2013, the legislature specifically defined what they believe were gang-related offenses, and that made that nexus between that crime and the gang activity, in my mind, and so I think it is constitutional.

The ruling of the trial court discussing the "nexus between th[e] crime and the gang activity" appears to indicate that, although the defendant's written motion limited the constitutional challenge to a claim of vagueness or overbreadth, the trial court had considered the challenge in terms of substantive due process.

The State, citing *State v. Rhoden* and *State v. Farmer*, insists that the defendant waived consideration of her constitutional challenge by failing to raise the issue prior to trial, arguing that "the waiver provision" of Tennessee Rule of Criminal Procedure 12(f) "applies to issues embracing the constitutionality of statutes."

In *State v. Bonds*, this court concluded that although "proscribing harmful street gang activity is a proper legislative purpose," Code section 40-35-121(b) "lacks a reasonable relationship to achieving the legitimate legislative purpose of deterring criminal gang activity and therefore violates the principles of substantive due process." *State v. Bonds*, 502 S.W.3d 118, 156, 157 (Tenn. Crim. App. 2016).[2] Additionally, when discussing the severability of any unconstitutional portions of the gang enhancement statute, we concluded that Code section "40-35-121(e) also fails for lack of a nexus." *Id.* at 162. Because we deemed those provisions facially unconstitutional, we vacated the criminal gang enhancements imposed on Bonds and his co-defendants and remanded the case for resentencing on modified judgments. *Id.* at 167.

The opinion in *Bonds* contains no indication whether the defendants in that case raised the constitutional challenge to the gang enhancement statute prior to trial and

---

[2] The legislature did, as the trial court suggested, amend the gang enhancement statute in 2013. That amendment, however, did not alter Code sections 40-35-121(b) or (e) in a manner that rendered either provision constitutional.

thus, contains no discussion of the Rule 12 waiver provision.[3] Other panels of this court addressing the constitutionality of the gang enhancement statute have agreed that a defendant must "challenge the constitutionality of the criminal gang enhancement statute prior to trial through a motion to dismiss in order to have properly preserved this issue for appeal." *State v. Ronald Turner*, No. E2016-00790-CCA-R3-CD, slip op. at 8 (Tenn. Crim. App., Knoxville, Apr. 13, 2017); *see State v. Gerald Lamont Byars*, No. W2016-00005-CCA-R3-CD, slip op. at 22-23 (Tenn. Crim. App., Jackson, Feb. 27, 2017); *State v. Christopher Minor*, No. W2016-00348-CCA-R3-CD, slip op. at 13-15 (Tenn. Crim. App., Knoxville, Feb. 16, 2017); *State v. William Jermaine Stripling*, No. E2015-01554-CCA-R3-CD, slip op. at 6-7 (Tenn. Crim. App., Knoxville, June 16, 2016); *cf. Ronnie Lamont Harshaw v. State*, No. E2015-00900-CCA-R3-PC, slip op. at 16-18 (Tenn. Crim. App., Knoxville, Mar. 24, 2017). Of these panels, only the majority in *Christopher Minor* refused to consider the defendant's challenge to the constitutionality of the statute,

---

[3] Rule 12 provides, in pertinent part:

(b) Pretrial Motions.

(1) Motions That May Be Made Before Trial. A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue.

(2) Motions That Must Be Made Before Trial. The following must be raised before trial:

(A) a motion alleging a defect in the institution of the prosecution;
(B) a motion alleging a defect in the indictment, presentment, or information--but at any time while the case is pending, the court may hear a claim that the indictment, presentment, or information fails to show jurisdiction in the court or to charge an offense;
(C) a motion to suppress evidence;
(D) a Rule 16 request for discovery; and
(E) a Rule 14 motion to sever or consolidate charges or defendants.

. . . .

(f) Effect of Failure to Raise Defenses or Objections. Unless the court grants relief for good cause, a party waives any defense, objection, or request by failing to comply with:

(1) rules requiring such matters to be raised pretrial;
(2) any deadline set by the court under Rule 12(c); or
(3) any deadline extension granted by the court.

Tenn. R. Crim. P. 12(b), (f).

concluding that Minor had waived the issue by raising it for the first time on appeal and that plain error was not appropriate because no clear and unequivocal rule of law had been breached. *See Christopher Minor*, slip op. at 13-15. As to the latter holding, the *Minor* majority, citing a footnote in *Taylor v. State*, 995 S.W.2d 78, 85 n.7 (Tenn. 1999), reasoned that because this court did not declare Code section 40-35-121(b) unconstitutional until after Minor's sentencing under the statute, the trial court did not err by using the statute to enhance his sentence. *Id.* The dissent agreed that plenary review was not available to Minor but determined that he was entitled to retroactive application of the ruling in *Bonds* because his case was in the appellate pipeline at the time *Bonds* was filed. *Christopher Minor*, dissent slip op. at 2-3.

The *Ronald Turner*, *Gerald Lamont Byars*, and *Ronnie Lamont Harshaw* panels grappled with the issue of retroactive application of the ruling in *Bonds* before concluding that the opinion should be applied retroactively. *See Ronald Turner*, slip op. at 8-10 (holding that *Bonds* applies to all cases in the appellate pipeline at the time it was filed); *Gerald Lamont Byars*, slip op. at 24-25 (holding that, because *Bonds* should be applied to all cases in the appellate pipeline at the time it was filed, Byars had satisfied the prerequisites to plain error review); *Ronnie Lamont Harshaw*, slip op. at 17-18 (holding that *Bonds* announced a new rule of constitutional law to be applied retroactively on collateral attack). The *Stripling* panel did not discuss the issues of plain error or retroactive application at all, using the ruling in *Bonds* as support for its own independent determination that Code section 40-35-121(b) was unconstitutional. *See William Jermaine Stripling*, slip op. at 10-11.

As we will explain more fully below, it is our view that the Rule 12 waiver provision does not apply and that this court need not resort to a determination of retroactive application of *Bonds* under the circumstances in this case.

We begin with an analysis of the origin of the State's claim that all constitutional challenges must be raised prior to trial or face waiver under Rule 12. In *Rhoden*, Rhoden "challenged the constitutionality of the statute proscribing the use of minors for obscene purposes," arguing that "the definition of 'sexual conduct' is overbroad because it prohibits using a minor to pose or model in the nude." *State v. Rhoden*, 739 S.W.2d 6, 10 (Tenn. Crim. App. 1987). This court observed that Rhoden "did not file a pre-trial motion attacking the indictment on the ground the statute was unconstitutional" and instead "raised this issue for the first time post-trial in his motion for a new trial." *Id.* Viewing Rhoden's constitutional attack as a challenge to the validity of the indictment, we noted that, pursuant to Rule 12, attacks on the indictment "must be raised prior to trial" and that the failure to do so resulted in waiver of the issue on appeal. *Id.* (citing Tenn. R. Crim. P. 12(b); *State v. Farmer*, 675 S.W.2d 212, 214 (Tenn. Crim. App. 1984); *State v. Hill*, 623 S.W.2d 293 (Tenn. Crim. App. 1981)). We said that "[t]he

-12-

waiver provision of Rule 12 applies to issues embracing the constitutionality of statutes as well as the constitutional rights of the accused." *Id.* (citing *Farmer*, 675 S.W.2d at 214; *State v. Foote*, 631 S.W.2d 470, 472-73 (Tenn. Crim. App. 1982)).

Although *Rhoden's* broad language appears to indicate that *any* constitutional challenge must be brought prior to trial or be subject to waiver under Rule 12, a careful examination of the various legal principles reveals, however, that the waiver provision of Rule 12 cannot apply to a claim that the *proscriptive statute* is itself unconstitutional *on its face*.

The operative language of Rule 12 provides:

> (b) Pretrial Motions.
>
> (2) Motions That Must Be Made Before Trial. The following must be raised before trial:
>
>    . . . .
>
> (B) a motion alleging a defect in the indictment, presentment, or information--*but at any time while the case is pending, the court may hear a claim that the indictment, presentment, or information fails to show jurisdiction in the court or to charge an offense*;
>
>    . . . .
>
> (f) Effect of Failure to Raise Defenses or Objections. Unless the court grants relief for good cause, a party waives any defense, objection, or request by failing to comply with:
>
> (1) rules requiring such matters to be raised pretrial;
>
> (2) any deadline set by the court under Rule 12(c); or
>
> (3) any deadline extension granted by the court.

Tenn. R. Crim. P. 12(b)(2)(B), (f) (emphasis added).

Despite our statement suggesting the contrary, *Rhoden* did not involve a facial constitutional challenge to the proscriptive statute itself but was instead a challenge

to the statute that supplied the definition for one of the terms in the proscriptive statute. *Rhoden*, 739 S.W.2d at 10. We agree that such a challenge must be raised prior to trial or it is waived.

In support of its broad proclamation, *Rhoden* cited *State v. Farmer*, a case that involved a caption clause challenge to the proscriptive statute. *Farmer*, 675 S.W.2d at 214. Observing that the defendant did not raise his caption clause challenge prior to trial, we stated that "the failure to make a motion to dismiss the indictments prior to trial constituted a waiver of this issue." *Id.* (citing Tenn. R. Crim. P. 12(b)(2)). A caption clause challenge to a codified statute would not necessarily result in a conclusion that the statute is void because "the codification of the statute cure[s] any defect in the caption." *Farmer*, 675 S.W.2d at 214 (citing *Howard v. State*, 569 S.W.2d 861, 863 (Tenn. Crim. App. 1978)). For this reason, we agree that a caption clause challenge not raised prior to trial is waived.

*Rhoden* also cited *State v. Hill*, a case that did not involve a constitutional challenge at all. Instead, Hill claimed that the State failed to establish "that the offense occurred on a date prior to the finding of the indictment" and that the State failed to show "that the grand jury returned the indictment within a year." *State v. Hill*, 623 S.W.2d 293, 295 (Tenn. Crim. App. 1981). We concluded that the waiver provision of Rule 12 operated as a bar to both claims. We noted, however, that the waiver provision would not apply to challenges to the indictment based on "lack of jurisdiction or failure to charge an offense." *Id.* In other words, a void charge in the indictment is not subject to the strictures of Rule 12.

Like *Farmer*, *State v. Foote*, the final case cited by *Rhoden*, did not address the application of the Rule 12 waiver provision to a claim that the proscriptive statute was unconstitutional on its face. Prior to trial, Foote filed a motion to suppress evidence obtained during the search of his person following his arrest and the identification made by an eyewitness at the scene. Following a hearing, the trial court "found that the officers had probable cause for the arrest and that the ensuing search was lawful. [It] also found that the identification of the defendants by one of the victims at the scene of the arrest was not tainted." *Foote*, 631 S.W.2d at 472 (Tenn. Crim. App. 1982). Foote's codefendant, Robert Lee, Jr., did not move to suppress the evidence prior to trial and instead filed a motion to suppress on the second day of the trial. We held that Lee waived his claim by failing to raise it prior to trial.

Although these cases support the proposition that *some* issues of constitutional dimension must be raised prior to trial or be waived, they do not support a broad proclamation that the Rule 12 waiver provision is applicable to *all* constitutional challenges.

-14-

When a statute is unconstitutional on its face, "'no set of circumstances exists under which the statute, as written, would be valid.'" *Bonds*, 502 S.W.3d at 161 (quoting *Waters v. Farr*, 291 S.W.3d 873, 882 (Tenn. 2009)). Such "[a]n unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed." *Norton v. Shelby Cty.*, 118 U.S. 425, 442 (1886). In consequence, a claim that the proscriptive statute is unconstitutional on its face strikes at the jurisdiction of the convicting court and, as a result, may be raised at any time before the sentence has expired, even in a petition for writ of habeas corpus. *See Archer v. State*, 851 S.W.2d 157, 160 (Tenn. 1993) ("[T]he writ is available to contest convictions imposed under unconstitutional statutes, because an unconstitutional law is void and can, therefore, create no offense."); *see also, e.g., John H. Williams, Jr., v. Kevin Myers, Warden*, No. M2002-00855-CCA-R3-CO (Tenn. Crim. App., Nashville, Dec. 20, 2002) ("If the statute were unconstitutional, it would be void from its date of enactment, and therefore, the trial court would have lacked the subject matter jurisdiction to hear the Petitioner's case, rendering its judgment of conviction void."). Under this doctrine, as our supreme court has repeatedly recognized, a criminal statute that is unconstitutional on its face is "void from the date of its enactment" and cannot, therefore, provide the basis for a "valid conviction." *State v. Dixon*, 530 S.W.2d 73, 74 (Tenn. 1975) (citing *Papachristou v. City of Jacksonville*, 405 U.S. 156 (1972); *Stone v. Wainwright*, 478 F.2d 390 (5th Cir. 1973); *Bannister v. United States*, 446 F.2d 1250 (3rd Cir. 1971); *O'Brien v. Rutherford Cty.*, 288 S.W.2d 708 (Tenn. 1956); *State v. Hobbs*, 250 S.W.2d 549 (Tenn. 1952)); *see also Capri Adult Cinema v. State*, 537 S.W.2d 896, 900 (Tenn. 1976) (observing the general rule that "an unconstitutional criminal statute is 'void from the date of its enactment', and that there can be no valid conviction thereunder."); *see also, e.g., State v. Mark Spencer King*, No. 01C01-9608-CR-00343 (Tenn. Crim. App., Nashville, Sept. 18, 1997) ("In this jurisdiction, an unconstitutional statute or an amendment to a constitutional statute is *void ab initio*-from the date of its enactment."); *cf. State v. Driver*, 598 S.W.2d 774, 776 (Tenn. 1980) ("An unconstitutional act designed to amend or supersede an existing law does not repeal or change the former valid act but leaves it in full force and effect."); *Leech v. American Booksellers Ass'n, Inc.*, 582 S.W.2d 738, 740 (Tenn. 1979) (same).

Our supreme court has recognized that the *void ab initio* "doctrine is alive and well in this state." *Edwards v. Allen*, 216 S.W.3d 278, 291 (Tenn. 2007) (citing *In re Boyd*, 189 F. Supp. 113, 116 (M.D. Tenn. 1959); *State ex rel. Barker v. Harmon*, 882 S.W.2d 352, 356-57 (Tenn. 1994); *Planned Parenthood Ass'n of Nashville, Inc. v. McWherter*, 817 S.W.2d 13, 15-16 (Tenn. 1991); *State v. Franks*, 772 S.W.2d at 431 (Tenn. 1989); *Driver*, 598 S.W.2d at 776; *Leech*, 582 S.W.2d at 755; *Capri Adult Cinema*, 537 S.W.2d at 900; *Dixon*, 530 S.W.2d at 74; *Collins*, 528 S.W.2d at 818; *Bd. of*

-15-

*Educ. of Memphis City Schs. v. Shelby Cty.*, 339 S.W.2d 569, 584 (Tenn. 1960); *O'Brien*, 288 S.W.2d at 710; *State v. Hobbs*, 250 S.W.2d 549, 553 (Tenn. 1952); *Henry Cty. v. Standard Oil Co.*, 71 S.W.2d at 684 (Tenn. 1934); *Roberts v. Roane Cty.*, 23 S.W.2d at 243 (Tenn. 1929); *Faust v. Metro. Gov't of Nashville & Davidson Cty.*, 206 S.W.3d 475, 493 (Tenn. Ct. App. 2006); *In re Int'l Fid. Ins. Co.*, 989 S.W.2d 726, 729 (Tenn. Crim. App. 1998); *Gay v. City of Somerville*, 878 S.W.2d 124, 126 (Tenn. Ct. App. 1994); *General Portland Inc. v. Chattanooga-Hamilton Cty. Air Pollution Control Bd.*, 560 S.W.2d 910, 913 (Tenn. Ct. App. 1976)). To be sure, our supreme court has also declared that "[b]ecause of the presumption in favor of the constitutionality of statutes, the public and individuals are bound to observe a statute though unconstitutional, until it is declared void by an authoritative tribunal." *Franks*, 772 S.W.2d at 431. This expression, however, evinces only the court's recognition "that the 'void ab initio' approach . . . is not appropriate for all circumstances." *State ex rel. Barker v. Harmon*, 882 S.W.2d 352, 356 (Tenn. 1994). Because, as the court observed, "the actual existence of a statute, prior to a judicial determination of its constitutional invalidity 'is an operative fact and may have consequences which cannot be justly ignored,'" courts will give "prospective application to a judicial determination that the statute is unconstitutional" in those instances when the "parties have acted in reasonable reliance on the existence and validity of a statute." *Id.* (quoting *Chicot Cty. Drainage District v. Baxter State Bank*, 308 U.S. 371, 374 (1940)). As the *Edwards* court explained, "[t]he modern trend is to find that the void ab initio approach fails when there has been reliance on an ordinance that has given rise to vested rights." *Edwards*, 216 S.W.3d at 291. This exception, which is essentially one of detrimental reliance, has no application in this case.

By its plain language, Rule 12 permits claims of a lack of jurisdiction to be raised at any time. Tenn. R. Crim. P. 12(b)(2)(B). A claim that the proscriptive statute is facially unconstitutional amounts to a claim that the trial court lacks jurisdiction to impose a conviction under the statute. *Dixon*, 530 S.W.2d at 74-75 (Tenn. 1975) (holding that an unconstitutional statute is "void from the date of its enactment" and cannot form the basis for a "valid conviction"). Consequently, a *facial constitutional challenge* to the *proscriptive statute* is not subject to the waiver provision of Rule 12. We observed in *Bonds* that "[d]espite simply being dubbed by the General Assembly as 'enhanced punishment,' the factual requirements of Section 40-35-121 are elements of the underlying criminal gang offenses because the statute increases the prescribed range of penalties applicable to a defendant." *Bonds*, 502 S.W.3d at 150; *see also Alleyne v. United States*, 133 S. Ct. 2151, 2162 (2013) ("When a finding of fact alters the legally prescribed punishment so as to aggravate it, the fact necessarily forms a constituent part of a new offense and must be submitted to the jury."). Because Code section 40-35-121(b) is part of the operative proscriptive statute and because the defendant has raised a facial constitutional challenge to that statute, the Rule 12 waiver provision does not operate to bar appellate review of her claim.

Because we have concluded that waiver does not apply in this case, we need not consider whether the defendant has satisfied the requirements for plain error review. Furthermore, as is revealed by our foregoing analysis, the claim of unconstitutionality in this case raises no issue of retrospective application of the ruling in *Bonds*.

Turning now to the defendant's claim, although we agree with the holding in *Bonds*, appreciate the fine work of that panel in reaching its result, and recognize its holding as binding precedent, "we fail to see how we would be constrained to uphold a statute" that is so plainly unconstitutional, even if the ruling in *Bonds* did not exist. *Gerald Lamont Byars*, slip op. at 24; *see Veach v. State*, 491 S.W.2d 81, 83 (Tenn. 1973) (concluding that a person "adversely affected, or about to be adversely affected by" an unconstitutional statute may prevail on a constitutional challenge for the first time on appeal even "without giving . . . retroactive effect" to the opinion that first declared the statute unconstitutional). We note, moreover, that our supreme court has determined that a reviewing court may consider "a constitutional attack upon the validity of a statute," even when it is raised "for the first time on appeal" when "the statute involved is so obviously unconstitutional on its face as to obviate the necessity for any discussion." *Lawrence v. Stanford*, 655 S.W.2d 927, 929 (Tenn. 1983). This court has now repeatedly declared Code section 40-35-121(b) facially unconstitutional, thereby obviating the need for an overwrought discussion of its continuing validity.

Accordingly, because the evidence was sufficient to support the conviction and no other error attends the finding of guilt in this case, we affirm the defendant's conviction of aggravated robbery. Because, however, that portion of the gang enhancement statute used to enhance the defendant's conviction and sentence in this case is unconstitutional, the judgment of the trial court imposing an enhanced sentence for the defendant's gang affiliation is reversed. The judgment is modified to reflect a Class B felony conviction of aggravated robbery, and the case is remanded for resentencing on the newly-modified conviction.

_____
JAMES CURWOOD WITT, JR., JUDGE